**AUTO OWNERS MUTUAL INSURANCE CO. et al., Plaintiffs,**

v.

**NORTHERN INDIANA PUBLIC SERVICE CO., Defendant-Appellant,**

and

**John Dehner, Inc., Defendant-Appellee.**

**Nos. 16988, 16990, 16992, 16994.**

United States Court of Appeals
Seventh Circuit.

July 31, 1969.

Robert L. Thompson, Jr., J. A. Bruggeman, J. Michael O'Hara, Fort Wayne, Ind., for NIPSCO, Barrett, Barrett & McNagny, Fort Wayne, Ind., of counsel.

William E. Borror, Leonard E. Eilbacher, William L. Wilks, John H. Krueckeberg, Arthur W. Parry, Gary A. Buelow, Fort Wayne, Ind., for John Dehner, Inc., Parry, Krueckeberg & Lee, Fort Wayne, Ind., of counsel.

Before CASTLE, Chief Judge, FAIRCHILD and CUMMINGS, Circuit Judges.

FAIRCHILD, Circuit Judge.

Plaintiffs, who are not involved in this appeal, recovered judgment against Northern Indiana Public Service Company (Nipsco, a utility which distributes gas) and John Dehner, Inc. (a contractor).[1] Plaintiffs recovered for property damage caused by explosion of gas which leaked from a Nipsco pipeline. Both defendants were found causally negligent. This appeal deals with Nipsco's cross-complaint for indemnity pursuant to contract between it and Dehner.

The pipeline was installed in 1951; the explosion occurred in 1966. The break occurred where two lengths of pipe had been welded by an employee of Dehner. It was also at the apex of a bend in the pipeline, where the welded line had been forced into a trench around an 18 degree bend, accommodating a change in the direction of the street.

The district court found that Dehner's employees were negligent in the welding and wrapping of the joint and that the resulting defects were substantial and seriously weakened the stress tolerance of the joint. The court found that Nipsco's inspector directed the springing or forcing of the line into a flexed position; that this caused the welded joint to be subjected to a constant pressure of 45,000 pounds per square inch and was contrary to established engineering practices; that Nipsco was negligent in directing that the pipe be sprung; that the defective weld, in itself, was insufficient to cause the failure, but the failure was produced by the combination of the stress and defectiveness of the weld. Nipsco was also found negligent in improper planning, engineering, and inspection. Judgment for each plaintiff against Nipsco and Dehner was predicated upon the concurrent causal negligence of the defendants. The record amply supports the findings.

The district court concluded that neither Nipsco nor Dehner had a common law right to be indemnified by the other; and this conclusion has not been challenged on appeal. With respect to Nipsco's claim of indemnity under express contract, the district court concluded (1) that the contract did not provide for indemnification of Nipsco for its own negligence, (2) that the indemnity provisions did not survive acceptance of Dehner's work by Nipsco, and (3) that contractual indemnification of a public utility in these circumstances would violate Indiana public policy. This appeal is concerned with the denial of indemnity pursuant to contract.

Dehner's work on the pipeline was performed under an agreement dated July 16, 1951. It consisted of a one page printed form with typewritten insertions, and attached sheets entitled "Conditions and Specifications." In the typewritten portion of paragraph (1), Dehner agreed:

> "To furnish all labor, tools, and equipment necessary to construct and install gas mains and/or services under supervision of the Gas Company's Engineer or Inspector, in accordance with the terms and conditions of the attached Contract and Specifications."

---

1. Jurisdiction is founded on diversity. Indiana law controls substantive issues.

In printed paragraph (5), Dehner agreed:

"(5) To defend any and all suits brought against the Company by any employee or other person (whether employed by the Contractor or not) for damages alleged or claimed to have been caused by or through the work done by the Contractor under this agreement, and to indemnify and save harmless the Company from and against all claim or claims arising out of the work done by the Contractor; also to pay, liquidate and discharge any and all claims or demands for injury, loss or damage to any and all persons or property caused by, growing out of, or incidental to the work done by the Contractor under this agreement, including all claims for damages for the obstruction to private driveways, streets and alleys, and including all costs of suits and reasonable attorney's fees. In the event of any accident or claim the Contractor shall give immediate notice to the Company. The Contractor further agrees to take out and maintain indemnifying insurance satisfactory to the Company, the policy or certified copy or copies thereof to be delivered to the Company upon request."

The agreement did not refer to any particular pipeline project. The attachment was, to a great degree, devoted to listing unit prices for various procedures which might be required. The particular pipeline projects were planned, staked out, and assigned to Dehner from time to time by Nipsco.

In this instance the liability of the indemnitee was caused by and arose out of the concurrent causal negligence of the indemnitee and the indemnitor. But for the indemnitee's negligence, the damage would not have occurred. The issue, under the law of Indiana, is whether, since the indemnity provision does not expressly include a liability arising out of the indemnitee's negligence, it is, nevertheless, "broad enough to cover injuries caused thereby." [2]

■ "A contract of indemnity which purports to relieve the indemnitee of his own negligence is to be strictly construed and will not be held to provide such indemnification unless so expressed in clear and unequivocal terms. * * * As a general rule, it is not required that there be an express reference to the negligence of the indemnitee. * * * " [3]

We point out that paragraph (5) is not to be read as if it required Dehner to defend, indemnify, and pay claims where the damage to property was caused by or the liability arose out of construction of the pipeline. In the context of the agreement and in the circumstances, the "work done by the Contractor under this agreement" was not synonymous with the installation of the pipeline since very important elements of the project remained the responsibility of Nipsco.

Paragraph (5) includes several obligations. Dehner must defend where the damages are alleged to have been caused by or through the work done by Dehner; must indemnify from claims arising out of the work done by it; and must pay claims for damage to property caused by, growing out of, or incidental to the work done by it. The record does not disclose what if any insurance was taken out or requested under paragraph (5) and thus does not show, in that respect, how the parties construed the paragraph.

It is undisputed, of course, that the welding found to be defective was work done by Dehner under the agreement. It was a cause of the damage to the properties for which plaintiffs recovered judgment. To that extent the claims arose and the damage was caused by work done by Dehner. Presumably if events or faults which were not the re-

2. General Accident & Fire Assur. Corp. v. New Era Corp. (1966), 138 Ind.App. 349, 213 N.E.2d 329, 332.

3. Norkus v. General Motors Corp. (S.D. Ind., 1963), 218 F.Supp. 398, 399, quoted with approval in General Accident, *supra*, fn. 1.

sponsibility of Nipsco had concurred with Dehner's defective welding in causing the damage and Nipsco had been claimed to be and held liable, Dehner would have been obligated to defend, to indemnify, and to pay. It would be a possible reading of paragraph (5) that the damage was caused by the work done by Dehner notwithstanding the fact that Dehner's negligence (or work) would not have produced the damage but for Nipsco's concurring causal negligence. The question whether such meaning meets the standard of being *unequivocal* is close.

 But we think that the Indiana judicial policy of disfavor toward indemnification of the indemnitee from liability for his own negligence requires special scrutiny of the language where indemnitee's liability rests even in part on his own causal, active, negligence.

It seems that the type of situation where courts have usually dealt with this problem is that where the indemnitor who is free from negligence is being asked to pay liability created by the negligence of the indemnitee. That is not the situation here. But the instant case does present elements which may also be at the root of the judicial attitude. The indemnity provision is part of a standard, here a printed form; the potential liabilities assumed if the provision is construed broadly are awesome; and in the nature of things thoughtful exploration by the parties of such possibilities is improbable. Moreover the indemnitee here retained control of the work to a very significant degree.

 Obviously paragraph (5) does not say that there is to be indemnification whether or not the particular liability arises out of the negligence of Nipsco.[4] The damage was not incidental to Dehner's work.[5] It does not say that Dehner is to indemnify for liability for injury or damages, arising in any manner whatsoever from the installation of

the pipeline. We agree with the district court that paragraph (5) does not evidence a clear intention to provide indemnification for the negligence (or joint negligence) of the indemnitee.

Having so decided, it is unnecessary to review the conclusions of the district court which supplied alternative bases for its decision, *i. e.*, that the indemnity provision did not survive acceptance of the work by Nipsco, or that because Nipsco is a public utility a provision indemnifying it for its own negligence would violate Indiana public policy.

The judgment appealed from is affirmed.

---

4. See the provision considered in Indemnity Insurance Co. of North America v. Koontz-Wagner Electric Co. (7th Cir., 1956), 233 F.2d 380, 382.

5. Cf. Spurr v. La Salle Construction Company (7th Cir., 1967), 385 F.2d 322, 330.