DONNA M. SHEA & another[1] vs. BAY STATE GAS COMPANY
& another;[2] CAMP DRESSER & McKEE, INC.,
third-party defendant.

Norfolk. March 20, 1980. — May 16, 1980.

Present: GREANEY, PERRETTA, & DREBEN, JJ.

*Contract*, Indemnity.

A clause in a certificate of insurance which was part of a contract between
a town and the general contractor on a sewer project, under which the
contractor was obligated to indemnify a corporation providing engi-
neering services in connection with the project "on account of any and
all claims . . . arising out of injuries . . . sustained by the public . . .
caused in whole or in part by the acts, omissions, or neglect of the con-
tractor including but not limited to any neglect in safeguarding the
work," was not broad or precise enough to indemnify the engineering
company against its own concurrent negligence. [747-751]

CIVIL ACTION commenced in the Superior Court on No-
vember 3, 1975.

A motion for summary judgment on a third-party com-
plaint was heard by *Chmielinski*, J.

*David W. Kelley* for J. Andreassi & Son, Inc.

*Francis H. Fox* (*S. Elaine Renfro* with him) for Camp
Dresser & McKee, Inc.

GREANEY, J. By their action brought on November 3,
1975, the plaintiffs sought damages from Bay State Gas
Company and J. Andreassi & Son, Inc. (Andreassi), for per-
sonal injuries arising out of a gas explosion at 1044 Turnpike
Street in Canton. Their complaint alleged that the gas
company negligently maintained and serviced the gas pipe
at that address and that Andreassi, a corporation "in the

---

[1] Dennis P. Shea, Jr.

[2] J. Andreassi & Son, Inc.

business of excavating and performing sewer contracting,"
negligently excavated, backfilled, and inspected a certain
sewer system in the area, causing a gas pipe to rupture. On
December 6, 1976, Andreassi filed a third-party complaint
against Camp Dresser & McKee, Inc. (CDM), seeking con-
tribution (G. L. c. 231B, §§ 1, 3; Mass.R.Civ.P. 14[a], 365
Mass. 760 [1974]) from CDM on the theory that CDM "neg-
ligently supervised, tested, inspected and examined" the
construction work performed by Andreassi pursuant to
CDM's contract with the town of Canton. After answer-
ing, CDM moved for summary judgment in its favor on the
third-party complaint, asserting that a clause in Andreassi's
certificate of insurance for the project on Turnpike Street
provided for Andreassi to indemnify CDM for its own con-
current negligence, thus barring any right to contribution.
After considering essentially undisputed facts and docu-
ments, a judge of the Superior Court allowed the motion
and entered a judgment dismissing Andreassi's third-party
complaint. Andreassi has appealed. At argument we were
informed that the principal action against Bay State Gas
Company and Andreassi has been tried in the Superior
Court and both defendants have been found negligent.[3] We
reverse the judgment, holding that the language in the in-
surance certificate is not broad or precise enough to indem-
nify CDM against its concurrent negligence.[4]

The facts underlying the motion are these. On or about
April 26, 1973, CDM entered into a contract with the town
for engineering services in connection with the construction

---

[3] The judgment on the jury verdict against these defendants removes the
need to consider the propriety of the judge's direction to enter a judgment
under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), on one of several
claims in the case. See *J.B.L. Constr. Co.* v. *Lincoln Homes Corp.*, *ante*
250, 252-253 (1980).

[4] Eight other cases were commenced in the Superior Court, all involv-
ing similar claims of negligence against the gas company and Andreassi;
in all eight Andreassi impleaded CDM, seeking contribution. The dispo-
sition of CDM's summary judgment motion applies to all the other third-
party actions, and it is agreed that the disposition of this appeal will apply
to the companion cases as well.

of a sewer system on Turnpike Street. As part of its services, CDM was called upon to prepare construction plans, specifications and documents for the project, including the certificate of insurance at issue here. CDM also bound itself to provide: (a) "basic engineering services during construction of the works"; and (b) "a full-time chief resident engineer . . . full-time construction inspectors for inspection of construction and such assistants as may be needed for initial layout of the construction work in the field." Andreassi entered into a contract with the town on October 18, 1973, based on contract documents prepared or provided by CDM. The certificate of insurance which was required as part of the contract pursuant to § 8 of the Supplemental General Conditions states:

> "The contractor shall at all times indemnify and save harmless the OWNER, CAMP DRESSER & McKEE, Inc. and their respective officers, agents, and employees, on account of any and all claims, damages, losses, litigation, expenses, counsel fees, and compensation arising out of injuries (including death) sustained by or alleged to have been sustained by the officers, agents, and employees of said OWNER or CAMP DRESSER & McKEE Inc., or of the contractor, his subcontractors, or materialmen, and from injuries (including death) sustained by or alleged to have been sustained by the public, any or all persons on or near the work, or by any other person or property, real or personal (including property of said OWNER or CAMP DRESSER & McKEE Inc.) caused in whole or in part by the acts, omissions, or neglect of the contractor including but not limited to any neglect in safeguarding the work or through the use of unacceptable materials in constructing the work of the contractor, any subcontractor, materialman, or anyone directly or indirectly employed by them or any of them while engaged in the performance of the contract, including the entire elapsed time from the date ordered to start work or the

actual start whichever occurs first until completion of the guarantee period, as certified by the OWNER or CAMP DRESSER & McKEE Inc."

CDM agreed that for purposes of the motion's disposition it was to be held equally at fault with the primary defendants for the explosion.

A contract seeking to indemnify a party against his own negligence or that of his employees is recognized as valid in Massachusetts. *Woodbury* v. *Post*, 158 Mass. 140, 144-145 (1893). However, for an agreement to have that effect, its language must expressly and unequivocally so provide. *New York, N.H. & H.R.R.* v. *Walworth Co.*, 340 Mass. 1, 5 (1959). "It is not to be assumed in the absence of clear stipulation that a[n indemnity] contract is to be construed as creating a result so far reaching, and involving consequences which may be so hazardous and momentous." *Boston & Me. R.R.* v. *T. Stuart & Son*, 236 Mass. 98, 104 (1920). See *Farrell* v. *Eastern Bridge & Structural Co.*, 291 Mass. 323, 324-325 (1935); *Laskowski* v. *Manning*, 325 Mass. 393, 398-399 (1950). See also *Miller* v. *Pennsylvania R.R.*, 236 F.2d 295, 298 (2d Cir. 1956) (under New York law the contract must express the intention beyond all doubt); *Thompson-Starrett Co.* v. *Otis Elevator Co.*, 271 N.Y. 36, 41-43 (1936) (must be expressed in unequivocal terms); *Cozzi* v. *Owens Corning Fiber Glass Corp.*, 59 N.J. Super. 570, 574-575 (1960) (construction must be required by clear and explicit language of the contract). Thus the rule that indemnity agreements "are to be fairly and reasonably construed in order to ascertain the intention[s] of the parties and to effectuate the purpose[s] sought to be accomplished" (*Century Indem. Co.* v. *Bloom*, 325 Mass. 52, 56 [1949]), bends to accommodate the policy that applies a rule of strict construction to agreements which seek indemnification against one's own negligent acts.

Such clear and unequivocal language is absent from the agreement in this case. The insurance certificate was pro-

cured for Andreassi by CDM as part of the package of documents typically required of the general contractor for a job of this sort. It contains a broad spectrum of coverages for "protective," "comprehensive," "general" and "auto" liabilities (including specific coverage for explosion), and for "workmen's compensation." Doubtless Andreassi had little to say on the types, scopes, amounts and terms of the coverages. The certificate's indemnification clause contains a promise by Andreassi that it will assume primary responsibility to answer for its own negligent acts and those of its subcontractors and materialmen. There is no promise to assume responsibility for the independent negligent acts of CDM or to forgo rights of contribution for those acts. Without Andreassi's promise, secondary responsibility by the sureties could not be obtained. We construe the language "caused in whole or *in part* by the . . . neglect of the contractor" (emphasis added) as indemnifying against negligent acts caused concurrently by Andreassi and one or more of its subcontractors or materialmen. We construe the phrase "including . . . any neglect in safeguarding the work" as extending coverage to incidents arising out of Andreassi's failure to protect third parties against potential hazards at the job site, both during and after working hours.

We reject CDM's contention that the clause is meaningless unless it is construed to provide CDM with complete indemnification against its own concurrent negligence. To be sure, CDM would have the right under common law without an agreement to compel Andreassi to indemnify it for any payments made to injured parties if Andreassi were solely at fault and CDM were not. *Stewart* v. *Roy Bros.*, 358 Mass. 446, 459 (1970). *Ford* v. *Flaherty*, 364 Mass. 382, 385-386 (1973). *Afienko* v. *Harvard Club*, 365 Mass. 320, 336 (1974). However, the clause specifically provides for "injuries . . . caused *in whole* or in part by the acts, omissions, or neglect of the contractor" (emphasis added). If for no other reason than the fact that an indemnity clause is only as good as the indemnitor's ability to pay, CDM benefits from having the policies by obtaining assur-

ances from solvent casualty companies that they will defend and protect CDM's interests in the event that Andreassi's promise proves to be valueless. Nor can we overlook the fact that the insurance policies were principally designed to protect the town's interests as an owner for its potential vicarious liability arising out of its nondelegable duties and the inherently dangerous nature of the work. See Prosser, Torts § 71, at 470-474 (4th ed. 1971). Massachusetts cases which shift risks to the indemnitor either where the indemnitor was not negligent or where the indemnitee was negligent have done so based upon agreements with broad and unrestricted language. See, e.g., *Woodbury* v. *Post*, 158 Mass. at 143 ("any injury"); *Farrell* v. *Eastern Bridge & Structural Co.*, 291 Mass. at 324 ("all loss or damage resulting from any . . . acts"); *New York, N.H. & H.R.R.* v. *Walworth Co.*, 340 Mass. at 4 ("any other loss, damage or injury . . . except such as arise solely from . . . gross negligence," indemnified against ordinary negligence); *Methuen Constr. Co.* v. *J & A Builders, Inc.*, 4 Mass. App. Ct. 397, 398 (1976) ("any loss, damages or causes of action"). See also Bachmann, Shifting Risks Through Insurance and "Hold-Harmless" Agreements, 28 Ins. Counsel J. 617, 618-619 (1961); Maurer, Architects, Engineers and Hold Harmless Clauses, 1976 Ins. L. J. 725, 727-728.

We are supported in our conclusion by other authorities which have rejected arguments similar to those advanced by CDM. In *United States* v. *Seckinger*, 397 U.S. 203 (1970), the United States Supreme Court, in the context of a workmen's compensation claim arising under the Federal Tort Claims Act on a government contract, rejected the government's contention that the indemnity clause set out in the margin[5] would be a "nullity" unless it should be construed to indemnify the government for its concurrent negligence.

---

[5] "The Contractor shall . . . be responsible for all damages to persons or property that occur as a result of his fault or negligence in connection with the prosecution of the work. He shall also be responsible for all materials delivered and work performed until completion and final acceptance . . . ." 397 U.S. at 208.

The Court said: "In short, if the United States expects to shift the ultimate responsibility for its negligence to its various contractors, the mutual intention of the parties to this effect should appear with clarity from the face of the contract. . . . [T]his intention is [not] manifested by the formulation incorporated into the present contract [*id.* at 212]. . . . [T]he most reasonable construction of the clause is . . . that liability be premised on the basis of comparative negligence [*id.* at 215]." The Supreme Court of Wisconsin in *Young* v. *Anaconda Am. Brass Co.,* 43 Wis. 2d 36, 53-55 (1968), in construing an indemnity clause which, like the one presently before us, provided indemnity against injury and damage "caused in whole or in part by the acts or omissions of the Contractor, its subcontractors or materialmen," held that a suit for contribution was not precluded by the language used and that the indemnitor was not liable for that portion of the total liability attributable to the concurrent negligent acts of the indemnitee. The Seventh Circuit Court of Appeals, in a gas explosion case, reached the same conclusion as to a printed indemnity form whereby the contractor agreed to hold a utility "harmless . . . from and against all . . . claims arising out of the work done by the [c]ontractor . . . ." *Auto Owners Mut. Ins. Co.* v. *Northern Ind. Pub. Serv. Co.,* 414 F.2d 192, 193-195 (7th Cir. 1969). The court observed that "[t]he indemnity provision is part of a standard . . . form; the potential liabilities assumed if the provision is construed broadly are awesome; . . . thoughtful exploration by the parties of such possibilities [was] improbable. Moreover the indemnitee . . . retained control of the work to a very significant degree." *Id.* at 195.

Finally, if CDM had intended to extend the clause beyond the stated scope of Andreassi's obligation, it is unlikely that it would have left that extension to implication. See *Chas. T. Main, Inc.* v. *Massachusetts Turnpike Authy.,* 347 Mass. 154, 162 (1964). See also *Pennsylvania Turnpike Comm.* v. *United States Fid. & Guar. Co.,* 343 Pa. 543, 546-548 (1942); 1 Couch, Insurance §§ 15:10, 15:14 (2d ed.

1959). Examples of provisions that make specific reference to the effect of the negligence of the indemnitee are readily available in the trade.[6] If any doubt remained, it would be resolved against CDM as the party responsible for procurement of the insurance. *Bowser* v. *Chalifour*, 334 Mass. 348, 352 (1956). *Massachusetts Turnpike Authy.* v. *Perini Corp.*, 349 Mass. 448, 454 (1965).

*Judgment reversed.*

---

[6] See, e.g., the following clause employed in the General Conditions of the Contract for Construction by the American Institute of Architects (AIA Doc. A201, cl. 4.18.1 [12th ed. 1970]):

> "The Contractor shall indemnify and hold harmless the Owner and the Architect and their agents and employees from and against all claims, damages, losses and expenses including attorneys' fees arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (2) is caused in whole or in part by any negligent act or omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder."

Two other examples of provisions which allow the owner or contractee to obtain indemnity despite its own negligence are set forth in Bachmann article cited in the text of this opinion. 28 Ins. Counsel J. at 618-619.