383 Mass. 218 (1981)
418 N.E.2d 597
DONNA M. SHEA & another[1]
vs.
BAY STATE GAS COMPANY & another;[2] CAMP DRESSER & McKEE INC., third-party defendant.
Supreme Judicial Court of Massachusetts, Norfolk.
December 1, 1980.
March 30, 1981.
Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & ABRAMS, JJ.
David W. Kelley for J. Andreassi & Son, Inc.
Francis H. Fox (S. Elaine Renfro with him) for Camp Dresser & McKee Inc.
ABRAMS, J.
The plaintiffs in this action sought damages from the defendants Bay State Gas Company (Bay State) and J. Andreassi & Son, Inc. (Andreassi), for injuries incurred when a gas pipe ruptured near 1044 Turnpike Street, in the town of Canton, causing an accumulation of natural gas and a subsequent explosion in the basement of the building occupied by the plaintiffs. The plaintiffs alleged that Bay State negligently maintained and serviced the gas *219 pipe and that Andreassi was negligent in excavating, backfilling, and inspecting a sewer system in that area, causing the rupture.
Andreassi filed a third-party complaint against Camp Dresser & McKee Inc. (CDM), seeking contribution on the grounds that CDM negligently supervised, tested, and inspected the sewer construction. See G.L.c. 231B, §§ 1, 3. CDM moved for summary judgment on the third-party complaint, claiming that a clause on an insurance certificate requires Andreassi to indemnify CDM against CDM's concurrent negligence. CDM's motion was allowed and the judge entered a judgment dismissing the third-party complaint. The Appeals Court reversed the judgment. Shea v. Bay State Gas Co., 9 Mass. App. Ct. 744 (1980). We granted CDM's application for further appellate review. We affirm the judgment of the Superior Court.
The essential facts are not in dispute. In April, 1973, CDM and the town of Canton entered into a contract whereby CDM was to provide services as consulting engineers for the construction of a sewer system on Turnpike Street. Those services included basic engineering and inspection services, as well as the preparation of construction plans, specifications and contract documents for the project. On October 18, 1973, Andreassi and Canton executed a contract, based on the documents prepared or provided by CDM, for construction of the sewer system.
Andreassi began construction on the project in September, 1974, and completed the work about one month later. On February 7, 1975, a gas pipe ruptured near 1044 Turnpike Street, causing the explosion which injured the plaintiffs (members of the public). The action against Bay State and Andreassi was filed on November 3, 1975, and, on January 21, 1980, a jury found Bay State and Andreassi negligent.
On May 19, 1978, CDM filed a motion for summary judgment,[3] going on the assumption that, for the purposes *220 of the motion's disposition, CDM is equally at fault with the primary defendants. An affidavit of one of CDM's officers was filed in support of the motion, as well as copies of the contract between CDM and Canton and a certificate of insurance provided to CDM by Andreassi as a result of Andreassi's contract with the town.[4]
CDM was responsible for drafting all documents for the town's use in contracting for the sewer construction. The certificate of insurance was one of these documents. It is signed by an authorized insurance representative and certifies that certain companies have issued policies to Andreassi providing comprehensive insurance protection.[5] At the bottom of the certificate, a paragraph entitled "Contractual *221 Liability" reads in part as follows: "The Contractor [Andreassi] shall at all times indemnify and save harmless the OWNER, CAMP DRESSER & McKEE Inc.... on account of any and all claims, damages, losses, ... arising out of injuries ... caused in whole or in part by the acts, omissions, or neglect of the contractor...."[6]
The issue on appeal is whether the "contractual liability" clause, properly construed, shifts to Andreassi as the general contractor responsibility for CDM's negligence. Andreassi argues two basic points on its claim that CDM is responsible for its own negligence. First, Andreassi argues that the contract of indemnity should be strictly construed. See Boston & Me. R.R. v. T. Stuart & Son, 236 Mass. 98, 104 (1920); New York, N.H. & H.R.R. v. Walworth Co., 340 Mass. 1, 5 (1959). Secondly, Andreassi claims that since CDM drafted the clause at issue it should be construed against CDM, and that the failure to explicitly include in the clause CDM's concurrent negligence is fatal to CDM's claim that its concurrent negligence is covered by the clause.[7] We do not agree.
*222 "Contracts of indemnity are to be fairly and reasonably construed in order to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished." New York, N.H. & H.R.R. v. Walworth Co., supra at 3, quoting from Century Indem. Co. v. Bloom, 325 Mass. 52, 56 (1949). Bullard v. Central Vt. Ry., 565 F.2d 193, 199 (1st Cir.1977). See Bachmann, Shifting Risks Through Insurance and "Hold-Harmless" Agreements, 28 Ins. Counsel J. 617 (1961); Potamkin & Plotka, Indemnification Against Tort Liability  The "Hold Harmless" Clause  Its Interpretation and Effect Upon Insurance, 92 U. Pa. L. Rev. 347 (1944).[8] "By the overwhelming weight of authority, something less than an express reference in the contract to losses from the indemnitee's negligence as indemnifiable will suffice to make them so if the intent otherwise sufficiently appears from language and circumstances." Stern v. Larocca, 49 N.J. Super. 496, 503-504 (1958). See United States v. Seckinger, 397 U.S. 203, 213 n. 17 (1970) ("a clause that is intended to encompass indemnification for the indemnitee's negligence ... [need not] explicitly state that indemnification extends to injuries occasioned by the indemnitee's negligence"). The present rule of construction recognizes that "[c]ontract interpretation is largely an individualized process, *223 with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties' intention." Id. We therefore "construe the contract with reference to the situation of the parties when they made it and to the objects sought to be accomplished." Bryne v. Gloucester, 297 Mass. 156, 158 (1937). See New Bedford Gas & Edison Light Co. v. Maritime Terminal, Inc., 380 Mass. 734, 735-736 (1980); Massachusetts Turnpike Auth. v. Perini Corp., 349 Mass. 448, 452 (1965); New York, N.H. & H.R.R. v. Walworth Co., supra at 3.
Andreassi and CDM each has a written contract with the town. CDM is not engaged in excavation or construction work and Andreassi is not an agent, servant or employee of CDM. CDM relies on the contractual liability clause on the bottom of the certificate of insurance naming CDM. See note 6, supra. CDM asserts that if the clause is not construed to provide CDM with indemnification against its own concurrent negligence, the clause has no content or purpose. The question is, What construction of the contractual liability clause reflects the intent of the parties?
CDM is protected at common law without the agreement if its liability were purely vicarious. See Afienko v. Harvard Club, 365 Mass. 320, 336 (1974); Ford v. Flaherty, 364 Mass. 382, 385-386 (1973); Stewart v. Roy Bros., 358 Mass. 446, 459 (1970). If the only purpose of the certificate of insurance was to assure the town and CDM that Andreassi had obtained adequate insurance coverage for his work, the "contractual liability" clause would have been surplusage, since the certificate of insurance without the clause is adequate for that purpose. The contention that the contractual liability clause does not cover CDM's concurrent negligence and is only evidence of adequate insurance robs the clause of vitality and "a sensible, practical construction." Massachusetts Turnpike Auth. v. Perini Corp., supra at 454. See Rice v. Pennsylvania, 202 F.2d 861, 862 (2d Cir.1953); Clark v. State St. Trust Co., 270 Mass. 140, 155 (1930); Stern v. Larocca, 49 N.J. Super. 496, 506 (1958); Barrons v. J.H. *224 Findorff & Sons, 89 Wis.2d 444, 453-454 (1979). See also McMahon v. Monarch Life Ins. Co., 345 Mass. 261, 264 (1962); Berger v. Siegel, 329 Mass. 74, 77-78 (1952). "Realistically viewed, the shift of liability is a shift in the burden of providing adequate insurance coverage." Cozzi v. Owens-Corning Fiber Glass Corp., 63 N.J. Super. 117, 128 (1960).[9] See American Agricultural Chem. Co. v. Tampa Armature Works, Inc., 315 F.2d 856, 860 (5th Cir.1963); Day v. Ocean Drilling & Exploration Co., 353 F. Supp. 1350, 1353 (E.D. La. 1973); Buscaglia v. Owens-Corning Fiberglas, 68 N.J. Super. 508, 515 (1961), aff'd 36 N.J. 532 (1962). We conclude that, in order to give the contractual liability clause meaning, it must be construed to protect CDM against its own concurrent negligence.
Granted, the language of the clause in issue here is less broad and less precise than that in clauses we have previously construed to encompass the indemnitee's negligence, see, e.g., Boston & Me. R.R. v. Hall, 284 F.2d 474 (1st Cir.1960), cert. denied, 365 U.S. 817 (1961); Brown v. Wong Gow Sue, 354 Mass. 646 (1968); New York, N.H. & H.R.R. v. Walworth Co., 340 Mass. 1 (1959); Clarke v. Ames, 267 Mass. 44 (1929). Nevertheless, we cannot ignore the basic rule of construction that we must give effect to the parties' *225 intentions and construe the language to give it reasonable meaning wherever possible. See Massachusetts Turnpike Auth. v. Perini Corp., supra at 452. Contrast Laskowski v. Manning, 325 Mass. 393, 399 (1950) ("This is not a case where it is necessary, in order to give effect to the lessee's undertaking, to construe his promise as comprehending an indemnity against the lessor's negligent acts ...").
We do not agree with Andreassi's argument that ambiguities in the language of the clause require this matter to be resolved against CDM as the drafter of the instrument. "A prerequisite to the application of [that] rule is that the alternative interpretation placed upon the alleged ambiguity by the contractor be, under all the circumstances, a reasonable and practical one." Gelco Builders & Burjay Constr. Corp. v. United States, 369 F.2d 992, 999-1000 (Ct. Cl. 1966). See Dittmore-Freimuth Corp. v. United States, 390 F.2d 664, 682 (Ct. Cl. 1968). It is neither reasonable nor practical to interpret the clause as being meaningless. Moreover, that rule of construction "must give way to the primary and inflexible rule that ... contracts, are to be construed so as to ascertain ... the true intention of the parties." Teeples v. Tolson, 207 F. Supp. 212, 215 (D. Or. 1962).
In this case the indemnity clause as we have interpreted it places full responsibility for the proper conduct of the work on the party primarily responsible for it, thus giving the contractor a necessary and desirable incentive to assure both proper performance and appropriate safety measures during the construction process. There was no error in granting CDM's motion for summary judgment.
Judgment of the Superior Court affirmed.
NOTES
[1] Dennis P. Shea, Jr., husband.
[2] J. Andreassi & Son, Inc.
[3] Andreassi asserts that since CDM failed to plead the indemnity agreement as an affirmative defense in its answer we should deem the point waived. Assuming without deciding that indemnification is an affirmative defense, "affirmative defenses, even though not appearing on the face of the complaint, may be established upon motion ... for summary judgment when, by affidavits, depositions and admissions, a set of undisputed facts is revealed upon which the moving party is entitled to judgment as a matter of law." Suckow Borax Mines Consol. v. Borax Consol., 185 F.2d 196, 205 (9th Cir.1950), cert. denied, 340 U.S. 943 (1951). See also 5 C.A. Wright & A.R. Miller, Federal Practice and Procedure §§ 1277, 1366 (1969 & Supp. 1980) ("When it is necessary to go outside the pleadings to establish or defend against a motion raising an affirmative defense, it can be done on a motion for summary judgment." Id. at 334-335.) There is no claim that Andreassi did not have "adequate opportunity to present arguments rebutting the defense." Weston Funding Corp. v. Lafayette Towers, Inc., 410 F. Supp. 980, 982 n. 2 (S.D.N.Y. 1976), aff'd, 550 F.2d 710 (2d Cir.1977). The motion for summary judgment raised the issue of whether CDM was entitled to a judgment in its favor as matter of law. Such a claim is appropriately raised by a motion for summary judgment. Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976). By its motion, CDM made "effective and proper use of Mass. R. Civ. P. 56, 365 Mass. 824 (1974), ... [and] eliminated an unnecessary trial [resulting] in a more prompt disposition of this matter than would otherwise have been obtained." Consolidated Cigar Corp. v. Department of Pub. Health, 372 Mass. 844, 846 (1977).
[4] The contract between Canton and Andreassi is not in the record.
[5] Coverage was distributed among insurers as follows: Hanover Insurance Co., Owner's Protective Liability; Royal Globe Insurance Companies, Comprehensive General Liability, Auto Liability, Workmen's Compensation; Maryland Casualty Company, Auto Liability, American Home Assurance Company, Comprehensive General Liability, Auto Liability.
[6] The entire paragraph reads as follows: "The contractor shall at all times indemnify and save harmless the OWNER, CAMP DRESSER & McKEE Inc. and their respective officers, agents, and employees, on account of any and all claims, damages, losses, litigation expenses, counsel fees, and compensation arising out of injuries (including death) sustained by or alleged to have been sustained by the officers, agents, and employees of said OWNER or CAMP DRESSER & McKEE Inc., or of the contractor, his subcontractors, or materialmen, and from injuries (including death) sustained by or alleged to have been sustained by the public, any or all persons on or near the work, or by any other person or property, real or personal (including property of said OWNER or CAMP DRESSER & McKEE Inc.) caused in whole or in part by the acts, omissions, or neglect of the contractor including but not limited to any neglect in safeguarding the work or through the use of unacceptable materials in constructing the work of the contractor, any subcontractor, materialman, or anyone directly or indirectly employed by them or any of them while engaged in the performance of the contracts, including the entire elapsed time from the date ordered to start work or the actual start whichever occurs first until completion of the guarantee period, as certified by the OWNER or CAMP DRESSER & McKEE Inc."
[7] Andreassi also claims that the contractual liability clause is not a contract. Andreassi's contract with the town is not included in the record. However, it is undisputed that the contractual liability clause was provided by Andreassi pursuant to its contract with the town and names CDM in its text. In these circumstances, CDM is an appropriate party to raise the issue of the proper scope of the clause.
[8] The strict construction rule originally was developed to ensure that the party assuming the liability understood the breadth of the undertaking. See Boston & Me. R.R. v. T. Stuart & Son, 236 Mass. 98, 104 (1920) ("It is not to be assumed in the absence of clear stipulation that a contract is to be construed as creating a result so far reaching, and involving consequences which may be so hazardous and momentous"). See also Annot., 175 A.L.R. 29 (1948); Potamkin & Plotka, Indemnification Against Tort Liability  The "Hold Harmless" Clause  Its Interpretation and Effect Upon Insurance, 92 U. Pa. L. Rev. 347, 351 (1944). In this case it is clear that the policy reasons concerning the breadth of the undertaking do not apply since Andreassi is the party primarily liable for injuries occurring during the construction project. Andreassi's claim is based on the theory that CDM should have discovered Andreassi's negligence.
[9] The shift in liability could have been more artfully phrased. See, e.g., the clause quoted by the Appeals Court in Shea v. Bay State Gas Co., 9 Mass. App. Ct. 744, 751 n. 6 (1980), found in the General Conditions of the Contract for Construction by the American Institute of Architects (AIA Doc. A201, cl. 4.18.1 [12th ed. 1970]): "The Contractor shall indemnify and hold harmless the Owner and the Architect and their agents and employees from and against all claims, damages, losses and expenses including attorneys' fees arising out of our resulting from the performance of the Work, provided that any such claim, damages, loss or expense (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (2) is caused in whole or in part by any negligent act or omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder." Cf. Garbincius v. Boston Edison Co., 621 F.2d 1171, 1176, 1177 (1st Cir.1980) (expressly excepting the concurrent negligence of the indemnitee).