# United States Court of Appeals
## For the First Circuit

No. 06-1697

CALDWELL TANKS, INC.,

Plaintiff, Appellee,

v.

HALEY & WARD, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Selya, Circuit Judge,
Campbell, Senior Circuit Judge,
and Lynch, Circuit Judge.

Warren D. Hutchison, with whom David J. Hatem, Jeffrey W. Hallahan, and Donovan Hatem, LLP were on brief, for Appellant.
Charles E. Schaub, Jr., with whom Hinckley, Allen & Snyder LLP, Robert M. Connolly, Anne E. Gorham, Mark W. Leach, and Stites & Harbison, PLLC were on brief, for Appellee.

December 8, 2006

**LYNCH**, **Circuit Judge**.  A federal jury ruled against Caldwell Tanks, Inc., the builder of a water tank, in an action it had instituted against Haley & Ward, Inc. (Haley), the engineer on the water tank project.  Haley had counterclaimed for indemnification of its expenses in defending the action against Caldwell, relying on a broadly worded indemnity agreement that ran from Caldwell as builder, to both the water tank owner, the Buzzards Bay Water District, and Haley as project engineer.  The jury, which had been properly instructed, found for Haley on the counterclaim and awarded $175,000 to Haley, thus reimbursing Haley for defense costs that indemnitor Caldwell had forced it to incur.

The district court vacated the jury verdict for Haley on the counterclaim.  See Caldwell Tanks, Inc. v. Tnemec Co., 417 F. Supp. 2d 179, 182-83 (D. Mass. 2006).  The court held as a matter of law that under Massachusetts law there could be no indemnity from Caldwell to Haley unless the agreement specified an express intent to permit such indemnification in indemnitor-indemnitee litigation.  Id. at 182.  The court also recognized that its decision might well have been otherwise if Haley's defense costs had been incurred in response to a third-party claim against Haley for its work on the project.  Id. at 182-83.

Haley appeals from the district court's judgment.  To date, there are no Massachusetts appellate court decisions precisely on point.  The question before us does not concern all

-2-

disputes between indemnitors and indemnitees. It is limited to whether Massachusetts courts have adopted a rule that an indemnity agreement must contain an express statement -- that the contract governs costs and attorney's fees incurred by an indemnitee in defense of unsuccessful claims brought by its indemnitor -- in order to depart from the normal American rule that each party bears its own attorney's fees in litigation, win or lose. See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 257 (1975); Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 717 (1967).

We hold that Massachusetts has not adopted any such rule, and so reverse. We have no need to address what special rules Massachusetts might apply to the construction of indemnity agreements in other fact settings.

I.

Pursuant to a contract dated August 29, 2000 (the Contract), Caldwell served as the general contractor on a project to construct a one-million-gallon elevated steel water tank for the Buzzards Bay Water District in Buzzards Bay, Massachusetts. Pursuant to a separate contract with the Water District, Haley served as project engineer.

On August 24, 2001, after the water tank had been erected, Haley and the Water District, among others,[1] attended a "test patch meeting" to determine whether the tank was ready to be painted. Tests performed at the meeting revealed the presence in certain areas of a black substance between the raw steel of the tank and the primer with which it had been coated. A number of attendees stated that they believed the substance to be mill scale, a substance that forms on steel during production, which Caldwell should have removed and which would interfere with the adhesion of the paint and primer to the tank. Thereafter, Haley stated to Caldwell that the tank surface did not meet the Contract specifications to which Caldwell had agreed. Haley requested that Caldwell remove the black substance and reprime the tank before it was painted. Eventually, Caldwell agreed to do so, without admitting liability.

On September 10, 2003, Caldwell sued Haley for negligent misrepresentation, claiming that Haley had failed to exercise reasonable care in determining and communicating to the involved parties that the black substance was mill scale.[2] In essence,

---

[1] Caldwell was represented at the meeting by a subcontractor.

[2] Caldwell also sued Tnemec Company, Inc., which supplied the primer and other coatings specified in the Contract, Robert L. Merithew, Inc., which served as paint inspector on the project, and Righter Group, Inc., which during the project provided advice about the Tnemec primer. Caldwell sued Tnemec for breach of contract, breach of express and implied warranties, concealment and

Caldwell's suit alleged that the problem was not mill scale at all, and was not Caldwell's fault.  Caldwell's argument was that the black substance had been caused by the primer that Haley had required Caldwell to use, and that in any event the substance did not compromise the integrity of the tank's surface coatings and therefore did not need to be removed.

Haley asserted a counterclaim for indemnification of its defense costs and any judgment rendered against it based on section 19.1 of the Contract, an indemnity clause that provides:

> The CONTRACTOR [Caldwell] will indemnify and hold harmless the OWNER [the Water District] and the ENGINEER [Haley] and their agents and employees from and against all claims, damages, losses and expenses including attorney's fees arising out of or resulting from the performance of the Work, provided that any such claims, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property including the loss of use resulting therefrom; and is caused in whole or in part by any negligent or willful act or omission of the CONTRACTOR, and SUB-CONTRACTOR, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable.

The case was tried before a federal jury in the District of Massachusetts.  Both Caldwell and Haley moved for directed verdicts.  The motions were denied and the case was submitted to

_____

nondisclosure, negligence, negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, and selling a defective product.  It sued Merithew and Righter for negligent misrepresentation.

the jury. The district court instructed the jury on the indemnification counterclaim as follows:

> [I]f you find that Haley & Ward is entitled to indemnification from Caldwell, you must determine how much that indemnification will be. Pursuant to the contract, indemnification is to include an amount for all claims, damages, losses and expenses arising out of or resulting from the Buzzards Bay project, including attorney's fees.

Caldwell did not object to these instructions. The jury returned a verdict for Haley as defendant on the negligent misrepresentation claim and for Haley as claimant on the indemnification counterclaim, and awarded Haley $175,000, the sum of its defense costs, in expenses.[3] The jury did not, of course, address the question of whether if Caldwell had been successful in its suit against Haley the Contract entitled Haley to indemnification.

Caldwell then moved under Rule 50(b) for a judgment notwithstanding the verdict on Haley's indemnification counterclaim, arguing that under Massachusetts law indemnity clauses do not apply to inter se litigation unless they expressly state otherwise.[4] The district court allowed the motion. Caldwell Tanks, 417 F. Supp. 2d at 183. The court concluded that "there is

---

[3] The jury also found for defendants Tnemec, Merithew, and Righter on all claims.

[4] Caldwell also argued that Haley could not as a matter of law recover the costs of defending itself against accusations of its own wrongful acts or of establishing a right to indemnity, and that Haley had failed to prove that Caldwell's claim was indemnifiable.

-6-

no right to indemnification of claims between an indemnitor and indemnitee unless the contract expressly contemplates such entitlement." Id. at 182. It based this conclusion on its reading of cases applying Massachusetts law and its own reasoning that

> [w]here indemnification is sought in the context of indemnitor-indemnitee litigation, courts generally require that the provision demonstrate a specific intent by the parties that the indemnity operate in that context.
>
> In this case, although the subject indemnity is broad enough to encompass indemnification of a claim brought by Caldwell against Haley, the contract bears no explicit indicia that the parties intended that interpretation. Indeed, if the provision is deemed to entitle Haley to indemnification of claims brought by Caldwell, it would just as likely also apply to opposing claims brought by Haley against Caldwell, which would surely violate the principle that a party seeking to enforce its rights against a wrongdoer is nevertheless responsible for its own attorney's fees.

Id. The court in essence held that Massachusetts law has adopted a rule that for an indemnification clause to apply in disputes between indemnitors and indemnitees, the contract must bear "explicit indicia" that the parties intended such an interpretation. See id.

Haley appeals, arguing that Massachusetts law does not require explicit language to enforce indemnity agreements in inter se litigation, and that the indemnity clause of the Contract permits the recovery of its costs in this case.

II.

A district court may grant a Rule 50 motion only when "after examining the evidence and all reasonable inferences therefrom 'in the light most favorable to the nonmovant,' it determines that 'the evidence could lead a reasonable person to only one conclusion,' favorable to the movant." Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1556 (1st Cir. 1994) (quoting Gallagher v. Wilton Enters., Inc., 962 F.2d 120, 124 (1st Cir. 1992)); see also Fed. R. Civ. P. 50(a)(1) ("If . . . a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law . . . ."). Since the court's ruling turned entirely on an issue of law, our review is de novo. Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 23 (1st Cir. 1998) ("We review de novo a district court's decision to grant a motion under Rule 50 for judgment as a matter of law.").

Under Massachusetts law, where material facts are not in dispute, interpretation of an indemnity clause is an issue of law. Post v. Belmont Country Club, Inc., 805 N.E.2d 63, 67 (Mass. App. Ct. 2004). True ambiguities, which may lead to questions of the intent of the parties, may be resolved by a jury. Seaco Ins. Co. v. Barbosa, 761 N.E.2d 946, 951 (Mass. 2002) ("Where . . . the

-8-

contract . . . has terms that are ambiguous, uncertain, or equivocal in meaning, the intent of the parties is a question of fact to be determined at trial."); Trafton v. Custeau, 155 N.E.2d 159, 161 (Mass. 1959) ("Where the terms of a written contract are ambiguous, both parties may testify as to what they understood by the terms of the contract when they executed it. The jury will then determine what were its terms and apply the law to such facts as they find comprised its terms."). "Contract language is ambiguous where 'an agreement's terms are inconsistent on their face or where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and obligations undertaken.'" Post, 805 N.E.2d at 70 (quoting Fashion House, Inc. v. K mart Corp., 892 F.2d 1076, 1083 (1st Cir.1989)). Although neither party offered any direct evidence as to the parties' intentions in executing the indemnification agreement, because the issue was submitted to the jury, which ruled for Haley, we take it that if there were any true ambiguity in the Contract, it has been resolved in Haley's favor.

The indemnity clause on which Haley relies expressly contemplates indemnification of litigation costs, including attorney's fees. Nonetheless, Caldwell argues that indemnification is inappropriate in this case because the clause does not expressly provide for indemnification of costs incurred in the course of

inter se litigation. Caldwell argues that Massachusetts law requires such specificity. We disagree.

In Shea v. Bay State Gas Co., 418 N.E.2d 597 (Mass. 1981), the Supreme Judicial Court rejected arguments that under Massachusetts law contracts of indemnity should be (1) strictly construed or (2) construed against the drafter. Id. at 600. Shea held that even when the indemnity claim involves losses flowing from the indemnitee's negligence, "something less than an express reference in the contract to losses from the indemnitee's negligence as indemnifiable will suffice to make them so if the intent otherwise sufficiently appears from language and circumstances." Id. (quoting Stern v. Larocca, 140 A.2d 403, 407 (N.J. Super. Ct. 1958)) (internal quotation marks omitted). Shea also cited United States v. Seckinger, 397 U.S. 203 (1970), for the proposition that "a clause that is intended to encompass indemnification for the indemnitee's negligence . . . [need not] explicitly state that indemnification extends to injuries occasioned by the indemnitee's negligence." Shea, 418 N.E.2d at 600 (alteration in original) (quoting Seckinger, 397 U.S. at 213 n.17) (internal quotation marks omitted). The applicable rule of construction is that "[c]ontract interpretation is largely an individualized process, with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties' intention." Id. (alteration in

-10-

original) (quoting Seckinger, 397 U.S. at 213 n.17) (internal quotation marks omitted).

Shea has been relied on more recently in Post, 805 N.E.2d at 69, and Speers v. H.P. Hood, Inc., 495 N.E.2d 880 (Mass. App. Ct. 1986). Speers held that "an indemnity provision is no longer to be read with any bias in favor of the indemnitor and against the indemnitee; it is to be interpreted like any ordinary contract, with attention to language, background, and purpose." Id. at 881 (footnote omitted).

Massachusetts law also has not adopted a special rule that requires that indemnity contracts be read as only applying to third parties unless there is explicit language to the contrary. See Hill v. Cabot, No. 91-0514-E, 1994 Mass. Super. LEXIS 419, at *28 (Mass. Super. Ct. Oct. 27, 1994) ("A plain reading of the Indemnification Agreement indicates that the indemnitor is responsible for attorneys fees 'incurred in . . . defending against any litigation . . . arising from . . . the failure of the Premises to conform . . . with standards of environmental quality . . . .' The agreement does not by its language, nor by implication, apply only to suits brought by [a particular third party]." (omissions in original) (footnote omitted)); cf. Whittle v. Pagani Bros. Const. Co., 422 N.E.2d 779, 781 (Mass. 1981) ("[Indemnity] contracts are to be fairly and reasonably construed to ascertain the intention of the parties and to effectuate their purpose.");

-11-

N.Y., New Haven & Hartford R.R. Co. v. Walworth Co., 162 N.E.2d 789, 791 (Mass. 1959) ("Contracts of indemnity are to be fairly and reasonably construed in order to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished." (quoting Century Indem. Co. v. Bloom, 88 N.E.2d 906, 908 (Mass. 1949)) (internal quotation marks omitted)). As one court pointed out nearly twenty years ago, there is nothing in the word "indemnity" that limits it to third parties. Edward E. Gillen Co. v. United States, 825 F.2d 1155, 1157 (7th Cir. 1987). That is also true today. See Black's Law Dictionary 784 (8th ed. 2004) (defining indemnity as "[a] duty to make good any loss, damage, or liability incurred by another" (emphasis added)).

The district court here implicitly and correctly ruled that the language of the Contract did not preclude indemnity arising from non-third-party suits, see Caldwell Tanks, 417 F. Supp. 2d at 182, and we agree. The language of section 19.1 of the Contract is broad enough to encompass indemnity arising from suits between the indemnitor and indemnitee.

The district court nonetheless reasoned that because of the particular nature of inter se claims under indemnity clauses, the "other indicia" referred to in Shea must always mean "explicit indicia." Id. In some inter se indemnity situations there may be public policy reasons why Massachusetts law might adopt such a rule. For example, Massachusetts could decide that for public

-12-

policy reasons it wished to avoid results that led to indemnifying a wrongdoer for his own negligence. There is some language in Massachusetts law, perhaps in tension with Shea, that supports the proposition that there must be express language to create such an obligation. See Rathbun v. W. Mass. Elec. Co., 479 N.E.2d 1383, 1384 (Mass. 1985) ("The general rule is that there must be express language creating an obligation to indemnify one against his own negligence."). Even so, the Post court held that "[i]ndemnification of a tortfeasor for damages caused by its own negligence is not illegal, and is a question of the intent of the parties." 805 N.E.2d at 70; see also Shea, 418 N.E.2d at 600-01.

Here, however, Haley's counterclaim did not ask that it be reimbursed for sums expended to defend against a suit in which its own negligence was established. Rather, its counterclaim was that it be allowed to recover expenses incurred as a result of Caldwell's suit against it, in which the jury found Haley not to have been negligent.[5] The district court relied heavily not on Massachusetts appellate authority, but rather on Petit v. BASF Corp., No. Civ.A. 96-1814A, 2001 Mass. Super. LEXIS 124 (Mass. Super. Ct. Apr. 20, 2001), and one federal decision construing state law, Astrolabe, Inc. v. Esoteric Techs. PTY, Ltd., No. Civ.A. 01-11352, 2002 U.S. Dist. LEXIS 5764 (D. Mass. Mar. 29, 2002). See

---

[5] Consequently, Caldwell's argument that strict construction of the indemnification clause is warranted because Caldwell had no control over Haley's actions is without merit.

-13-

<u>Caldwell Tanks</u>, 417 F. Supp. 2d at 182. But those cases were the reverse of this one; there, the indemnitees sought to recover their own self-inflicted costs incurred in prosecuting affirmative claims against an indemnitor.[6] <u>See</u> <u>Astrolabe</u>, 2002 U.S. Dist. LEXIS 5764, at *14-15; <u>Petit</u>, 2001 Mass. Super. LEXIS 124, at *2. Moreover, in <u>Astrolabe</u>, the contract itself indicated that the indemnity clause was to apply only to suits by third parties. <u>See</u> 2002 U.S. Dist. LEXIS 5764, at *15-16. In the situation exemplified by those cases, the indemnitor has strong arguments that it should not be required to reimburse attorney's fees, over which it had no control, for suits against it by an indemnitee.

The question here comes down to whether Massachusetts has adopted a rule that as a matter of law an indemnity contract cannot reshape the American rule in a dispute between indemnitor and indemnitee absent an express statement to that effect. But it is well accepted under Massachusetts law that parties may alter the American rule by contract. <u>See, e.g.</u>, <u>Whittle</u>, 422 N.E.2d at 781; <u>Shea</u>, 418 N.E.2d at 600. The Contract here explicitly allowed for

_____

[6]    In its brief, Caldwell also relies on <u>Grant</u> v. <u>Hexalon Real Estate, Inc.</u>, No. 91-5338-D, 1997 Mass. Super. LEXIS 366 (Mass. Super. Ct. Sept. 15, 1997), <u>rev'd</u>, 748 N.E.2d 1056 (Mass. App. Ct. 2001), and <u>Shan Indus., LLC</u> v. <u>Tyco Int'l (US), Inc.</u>, Civ. No. 04-1018, 2005 U.S. Dist. LEXIS 30170 (D.N.J. Nov. 30, 2005), two unpublished decisions applying Massachusetts law to determine whether indemnity clauses applied to inter se lawsuits. Like <u>Petit</u> and <u>Astrolabe</u>, both <u>Grant</u> and <u>Shan</u> involved indemnification for the cost of claims brought by the indemnitee against the indemnitor, <u>see</u> <u>id.</u> at *24; <u>Grant</u>, 1997 Mass. Super. LEXIS 366, at *7, and are therefore not analogous to the case before us.

-14-

recovery of defense costs, including attorney's fees.[7]  It is equally well accepted under Massachusetts law that indemnification provisions are construed in accordance with their ordinary and plain meaning and without any bias in favor of the indemnitor or against the indemnitee.  See, e.g., Herson v. New Boston Garden Corp., 667 N.E.2d 907, 911 (Mass. App. Ct. 1996); Kelly v. Dimeo, Inc., 581 N.E.2d 1316, 1318 (Mass. App. Ct. 1991).

To bolster its argument, Caldwell cites to FDIC v. Fedders Air Conditioning, USA, Inc., 821 F. Supp. 50 (D. Mass. 1993), rev'd in part on other grounds, 35 F.3d 18 (1st Cir. 1999), a case applying Illinois law, and Hooper Assocs. Ltd. v. AGS Computers, Inc., 548 N.E.2d 903 (N.Y. 1989), and Bertaux v. Dreyfus Trust Co., Civ. A. No. 99-10815, 2002 U.S. Dist. LEXIS 4077 (D. Mass. Mar. 12, 2002), cases applying New York law, for the proposition that indemnity for inter se litigation should not be inferred unless explicitly provided for in the contract.  We apply Massachusetts law.[8]

---

[7]    Caldwell makes much of the rule that "[a] contract should be construed to give it effect as a rational business instrument." Lewis v. Chase, 505 N.E.2d 211, 214 (Mass. App. Ct. 1987). Construing the indemnity clause to allow for indemnification in this case, as the jury did here, is not irrational.

[8]    To the extent Caldwell cites to FDIC, Hooper, and Bertaux because they were relied upon by courts applying Massachusetts law in  Grant, Petit, and Shan, we have already explained that those cases are inapposite.

Federal courts sitting in diversity jurisdiction are constrained in their interpretation of state law. See Douglas v. York County, 433 F.3d 143, 149 (1st Cir. 2005) ("As a federal court sitting in diversity, we try to apply our best understanding of the principles Maine has adopted. It is not our role to expand Maine law; that is left to the courts of Maine."); Ryan v. Royal Ins. Co. of Am., 916 F.2d 731, 744 (1st Cir. 1990) ("We have warned, time and again, that litigants who reject a state forum in order to bring suit in federal court under diversity jurisdiction cannot expect that new trails will be blazed."). We lack the authority to establish for Massachusetts new special rules for shifting defense costs under inter se indemnity contracts like this. Massachusetts law imposes no explicit statement rule for indemnity contracts generally, or for varying the American rule, and contains no assumption that indemnity provisions are restricted to third-party claims. Against that background, we will not fashion a new rule. We hold that the district court erred.

## III.

Caldwell makes four other arguments, any one of which, if valid, could support the district court's judgment on other grounds. We discuss each briefly.

Caldwell relies on section 6.33 of the Contract and Article 16 of the General Condition and Supplementary Conditions to argue that the Contract as a whole precludes reading section 19.1

-16-

to apply to disputes between Caldwell and Haley.   Section 6.33

provides:

> The indemnification obligations of CONTRACTOR
> [Caldwell] . . . shall not extend to the
> liability of ENGINEER [Haley] and ENGINEER's
> Consultants, officers, directors, employees or
> agents caused by the professional negligence,
> errors or omissions of any of them.

This, Caldwell argues, expresses an intent to specifically exclude

claims against the Engineer for professional negligence from

indemnification.   Article 16 requires that all claims between

Caldwell and the Water District (also an indemnified party) be

resolved by arbitration.   If the indemnification clause were read

to apply inter se, Caldwell argues, Article 16 would be rendered

meaningless.   The issue was not argued to the trial court, and it

is waived.  See States Res. Corp. v. The Architectural Team, Inc.,

433 F.3d 73, 85 (1st Cir. 2005) ("[I]ssues not presented to the

district court cannot be raised on appeal."  (quoting Ouimette v.

Moran, 942 F.2d 1, 12 (1st Cir. 1991)) (internal quotation marks

omitted)); Violette v. Smith & Nephew Dyonics, Inc., 62 F.3d 8, 11

(1st Cir. 1995) ("An issue not presented to the trial court may not

be raised for the first time on appeal.").

Caldwell also argues that judgment notwithstanding the

verdict should enter on the basis that its claim against Haley --

one of negligent misrepresentation -- was not an indemnifiable

claim.   Caldwell made its argument to the district court in its

Rule 50 motion for judgment as a matter of law.  The district court did not address the argument directly, but did state that "the same claim brought under a different procedural posture might be indemnifiable."  Caldwell Tanks, 417 F. Supp. 2d at 182.

We reject Caldwell's argument.  In finding for Haley on its counterclaim, the jury must necessarily have concluded that Caldwell's claim was indemnifiable.  A reasonable jury could have found that Caldwell's claim met all three of the contractual requirements for indemnification: that the claim and the resulting attorney's fees arose out of Caldwell's work on the Buzzards Bay Water Tank; that the claim was attributable to injury of tangible property, notably the water tank itself;[9] and that the damage to the water tank resulted from Caldwell's negligence.  There was ample evidence to that effect at trial, including testimony and questionnaires indicating that the black substance was mill scale that Caldwell should have removed, and various reports from independent laboratories confirming as much.  A reasonable person could have concluded, as the jury did, that Caldwell's negligent misrepresentation claim was indemnifiable under the Contract.  See Aetna Cas. Sur. Co., 43 F.3d at 1556.

---

[9]     Although the claim was for negligent misrepresentation, rather than for negligent conduct that actually caused the damage, the dispute essentially was about whether there was damage and, if so, who should bear responsibility for the damage, and in that sense, it would have been reasonable to conclude that the claim was attributable to the damage.

Caldwell argues that even if its negligent misrepresentation claim was subject to the indemnification clause, Haley failed to prove its counterclaim because the jury made no finding that Caldwell was negligent, and the evidence was insufficient. The argument, which arguably was preserved, fails. To award defense costs to Haley, the jury must necessarily have found that Caldwell was liable under the indemnity agreement. As we have just noted, drawing all reasonable inferences from the evidence in the light most favorable to Haley, such a finding was reasonable.

Finally, Caldwell argues that Haley failed to apportion its attorney's fees to exclude those incurred in establishing its right to indemnity. This argument was properly preserved, but it is without merit. Caldwell cites the general rule that "[a] claim for attorney's fees and costs under an indemnification agreement does not extend to costs incurred in establishing the right of indemnity." 41 Am. Jur. 2d Indemnity § 30 (2006). But here, Haley seeks to recover its costs for defending against Caldwell's negligent misrepresentation claim. Haley's defense to Caldwell's claim and its proof of its counterclaim were co-extensive. That defending itself against Caldwell's claim necessarily served to prove its counterclaim, and therefore its right to indemnity, does not transform Haley's attorney's fees -- or any portion thereof -- from indemnifiable into non-indemnifiable expenses.

The judgment of the district court is <u>reversed</u>, and the case is <u>remanded</u> with instructions to reinstate the verdict of the jury.[10]  Costs are awarded to Haley.

---

[10]    Haley has indicated that it will seek indemnification of its attorney's fees for this appeal.  That issue should be directed to the district court for consideration.