**JEFFERSONIAN CLUB v. WAUGH et al.**

No. 12032.

Court of Civil Appeals of Texas. Galveston.

Jan. 20, 1949.

Rehearing Denied Feb. 10, 1949.

Sam Neathery and J. A. Copeland, both of Houston, for appellant.

Merrill & Scott, of Houston, for appellees.

CODY, Justice.

At the threshold of this appeal we are confronted with appellant's contention to the effect that the judgment, which was rendered in its favor on April 10, 1946, has rendered the issues herein res adjudicata, because the records of the court fail to show that appellees' motion to set said judgment aside and for a new trial was ever acted upon, and hence it must be taken that the motion was overruled, and that the said judgment became final. Appellant is mistaken as to the state of the record.

A supplemental transcript, which was filed in this Court after appellant had perfected its appeal herein, shows that the trial court, on October 13, 1948, granted a motion, filed by appellees after this Court's appellate jurisdiction had attached, to enter a nunc pro tunc order as of April 25, 1946, setting aside the judgment of April 10, 1946, and granting a new trial. The trial court's action on said motion was in all things regular, and was based on the following notation which appears on its Motion Docket, "April 25, 1946—Defendants' Motion for a New Trial granted as per order." Manifestly the evidence was sufficient to support the aforesaid nunc pro tunc order. What we recently said in Bolling v. Rodriguez, Tex.Civ.App., 212 S.W.2d 838 illustrates the rule that a court never loses the authority to correct its records to make them speak the truth.

In order to understand the pleadings, it is first necessary to know the background of the case, and to know the different versions of the facts held by appellant and appellees.

Appellant was first organized and incorporated by a group of Houston ladies as a club for literary, social and charitable purposes. When this dispute arose in January, 1945, the Club owned a clubhouse which was located in Kemah, which is near Houston, but which is located on the bay in Galveston County. Appellant acquired title to the clubhouse property in 1933, and in the deed of conveyance to the Club, the Grantor, at the behest of the Club, wrote into the deed the provision that the management and control of the property so conveyed to the Club was vested in five members of the Club, naming said members. It was also provided in the terms of the deed, at the behest of the Club, that said five members should be self-perpetuating permanent trustees; and further, that in the event that a vacancy occurred among the permanent trustees by death or by one of said trustees ceasing to be a member, such vacancy should be filled by remaining trustees from the governing body of the Club. By the year 1940 or 1941, the deferred payments against the clubhouse had been paid off. In the 1937—1938 constitution and by-laws of the Club,

essentially the same provisions relative to the management and control of the clubhouse were set forth, and there is no evidence of any formal renewal of the term of the permanent trustees to suggest that any conscious change had been intended. and the original permanent trustees remained in control. In early 1945, the permanent trustees had their first occasion to fill a vacancy.

Mrs. O. H. Carlisle was president of the Club in January, 1945, having become a member in 1940 or 1941, which was after the clubhouse had been paid out. In January, 1945, it seems that there was a move to adopt a new constitution and set of by-laws. As we gather the version of appellees from the statement of facts, Mrs. Carlisle favored a change in the provision as to the management and control of the clubhouse property which would abolish the permanent trustees, and in effect vest the management and control thereof in the officers of the Club. According to that version, as we have so gathered it, ladies were admitted into purported membership in the Club without the required preliminaries having complied with, and these ladies, so admitted, favored the change which Mrs. Carlisle favored. Further, according to appellees' version, as we have gathered it, the new constitution and by-laws, but without the proposed change in control of the clubhouse property, had been approved at the first and second readings at regular meetings. And it is further a part of this version that, at a social meet- of the Club held at the home of Mrs. Carlisle on May 22, 1945, the matter was called up for the third reading, and that, notwithstanding this was not a business meeting, out of the 17 ladies who were present, 8 voted against it, so that the required two-thirds majority was in no event cast in favor of the proposed change in the control of the clubhouse, and that it failed of adoption. It is further the version of appellees that Mrs. Carlisle accepted the incorrect count of 12 to 5, and announced that the change had been adopted. That as a matter of fact 8 members out of the 17 present voted against its adoption.

The version of appellant was contrary to that of appellees in all material respects.

With reference to the meeting of May 22, 1945, it was this version, that by an amendment, there was added to the constitution and by-laws—the controversial provision, and the same was regularly adopted by a two-thirds majority vote, there being 12 votes for, and 5 votes against.

It was undisputed that eight of the members who were present at the meeting of May 22, 1945, were what is called in the record "old" members, and had belonged to the Club at the time the clubhouse property had been acquired and paid for. And it is undisputed that, with the exception of one, the "old" members were opposed to the change in the management and the control of the clubhouse.

On June 9, 1945, the "old" members met and appear to have attempted a reorganization of the Club, without Mrs. Carlisle and without the "new" members. They elected a set of officers, and got themselves recognized as the Jeffersonian Club by the Secretary of State. In the fall, by what may be termed an ex parte proceeding, the "old" members expelled Mrs. Carlisle from what they considered the real Jeffersonian Club.

In August, 1945, a suit was filed in the name of the Jeffersonian Club against appellees, who were, if the change in the control of the clubhouse was not legally adopted, the permanent trustees. It was the version of appellees that Mrs. Carlisle had no authority to have said suit filed in the name of appellant. It was the version of appellant that Mrs. Carlisle as president had the authority to cause the suit to be filed.

The pleading which was so filed in August, 1945, alleged in substance the lawful adoption of the change in the provision as to management and control of the clubhouse property, and alleged that appellees were wrongfully in possession of the property, and the rents and revenues thereof, etc., and sought to require appellees to account, and sought to restrain appellees from interfering with the Club's property, and sought recovery of damages against appellees in the sum of $1000.00 actual damages, and $5000, exemplary damages.

At the outset of this opinion we have mentioned the judgment which was taken by appellant on April 10, 1945, and which was subsequently set aside on April 25, 1945. In May, 1946, appellees filed an answer alleging in substance their version, and in their pleading they alleged the provision of the by-laws which required an application for membership to be signed by two members, and to be passed on first by the credential committee, and in turn by the Executive Board, and then to the Club for election, and alleged the violation of this provision. Appellees further alleged that the clubhouse property was bought with contributions made by the "old" members. Appellees further alleged that the Jeffersonian Club was a party to the Texas Federation Women's Club, and that it had placed the dispute before that body, and that the Club as constituted by its "old" members had been recognized as the true Club.

On January 14, 1948, appellees filed a plea in abatement. And on April 27, 1948, a Motion to Dismiss the suit was filed in the name of the Jeffersonian Club, acting through its purported officers. This pleading was filed by the Club as constituted of "old" members, with whom appellees are aligned. In substance the motion alleged that the suit against appellees was not in reality brought by the Club, and was not brought in good faith.

The court heard evidence on this motion. Only two witnesses testified, presenting the opposing versions. The version of the "new" members was supported by minutes purporting to be the minutes of the true Club, and prepared by its officers. At the conclusion of the hearing on the Motion to Dismiss, the parties, acting through their respective counsel stipulated:

"* * * that the evidence introduced before the court up to this time constitutes all of the evidence to be introduced by either party, and shall be submitted to the court for full and final determination of all matters in controversy, and that a jury has been waived by both parties, and all matters are submitted to the court for full and final adjudication. And the evidence submitted shall constitute the complete record in the case. * * *"

The court held the matter under advisement for some weeks, and then rendered a take-nothing judgment against appellant (plaintiff below). No findings of fact were requested, and none were filed.

Appellant predicates its appeal upon ten formal points, which in substance present:

I. That the court erroneously held that the judgment of April 10, 1946, in favor of appellant did not become final.

II. That the court erred in considering the evidence on Defendant's Motion to Dismiss, as said motion was but a belated plea in abatement.

III. That the hearing before the court on April 27, 1948, as shown by the record, was not on the merits, and the court erred in rendering a take-nothing judgment on the merits of the case.

IV. That the undisputed competent evidence showed that the provision taking the management and control of the clubhouse property from the permanent trustees was validly adopted, and that Mrs. Carlisle was the president of the real Jeffersonian Club.

V. That the undisputed evidence shows that it was the law of the Club that failure to pay Club dues before they become delinquent automatically deprived members of membership, and the undisputed evidence shows that each of the "old" members had failed to pay their dues to the lawfully constituted officers of the Club, and had thereby ceased to be members of the Club, and in no event was a non-member of the Club entitled to possess Club property.

We ruled at the outset of this opinion that the judgment of April 10, 1946, did not become final, but was set aside, and that a new trial was validly granted. Appellant's point I is overruled.

■ We overrule appellant's point II. If it be conceded that the Motion to Dismiss was but a belated plea in abatement, it cannot be denied that the court had jurisdiction to rule thereon. No objection was made to the consideration of the motion in the trial court. It is too late after a party has participated in a hearing without objection, and suffered adverse ruling then to object for the first time that, in the course of proper procedure, it was too late for the trial court to act. An ob-

jection to the late presentation of a plea in abatement may be waived. See 1 Tex. Jur. p. 157. We do not pass on whether the Motion to Dismiss was in the nature of a plea in abatement.

■ We overrule appellant's point III. We agree that the hearing of April 27, 1948, was held on a pleading which did not profess to go to the merits of the contest, but to the good faith of the suit. One witness and only one witness was called to testify in support of the motion. She is the president of the Club, as constituted of the "old" membership. And only one witness testified against the motion. She is the president of the Club as constituted of the "new" membership. At the conclusion of the evidence, the parties made the stipulation we have set forth above. As we construe the stipulation, it provided that the evidence given on the hearing was all the evidence which the parties could produce on a trial of the merits, and it was provided in the stipulation that the same was submitted to the court for a final determination of all matters in controversy. We are without doubt that the effect of the stipulation was to submit the case to the jury on the merits, and that, had the court adopted appellant's version of the facts, the court would have entered a judgment which would have ousted the permanent trustees from control of the clubhouse, and required them to make an accounting, and have restrained them from interfering with the clubhouse property, and other property of the Jeffersonian Club, and, had he found any liability for damages, have assessed such damages. Under the stipulation of the parties, it was not error on the part of the court to comply therewith, and enter a final judgment such as the evidence justified. Whether the court erred in entering a judgment against appellant depends upon the evidence before the court. This we will consider under the discussion of appellant's point IV.

As pointed out above, it was appellant's version that the by-laws were validly adopted by a 12 to 5 majority vote at the meeting of May 22, 1945. It is not disputed, as we understand the record, that 17 members were present on that occasion. We believe that is not disputed that 8 of that number were aligned with the "old" membership, and that 9 were aligned with the new membership. While it is the version of appellant that all 17 members participated in voting, and voted in favor of the change of control, and the minutes introduced by appellant so reflect, yet as we read the evidence introduced by appellant, three of those who were aligned with the "old" membership refrained from voting. If this is correct, then appellant's evidence, other than the minutes, actually showed that 9 members voted for the change and 5 against, which fall short, of course, of a two-thirds majority.

■ However, appellees' version of the vote on whether the change in the control of the clubhouse property, as we understand it, is that none of the 17 members abstained from voting, and that 9 had voted in its favor, and 8 had voted against it. By its pleading appellant had based its right to oust appellees from control of the property on the allegation that the Club had adopted a change of control. It was the duty of the court, as the trier of the facts, to determine this controverted issue. In order to support the court's judgment that appellant take nothing, it must be presumed that the court found as a fact that the provision for the change in control of the clubhouse property was not adopted. Unless the minutes of meeting, which was introduced by appellant, imported verity there was ample evidence to support a conclusion by the court that appellees' version as to the vote was correct.

■ By uniting with the Jeffersonian Club, its members agreed to abide by its rules, and to settle disputes that arise in the method provided for in the Constitution and by-laws. See Screwmen's Ben. Ass'n v. Benson, 76 Tex. 552, 13 S.W. 379. While there is a dearth of authority on Clubs such as is here involved, and none cited by the parties which are controlling or even in point on such a situation as is here presented, yet it seems clear that as a general rule, the courts would not admit, as competent evidence, the uncorroborated testimony of a single witness in conflict

with the duly and regularly approved minutes of the association, except where the civil or property rights of a litigant required it. However, that opinion is not called for by the facts in this case, and we therefore make no such holding. It is here apparent that appellant brought this suit claiming a property right belonging to it had been violated by appellees, and seeking relief which, if its allegations were sustained by the evidence, invoked the jurisdiction of the court.

Appellant alleged as the foundation of its right to relief against appellees, the adoption of the controversial provision with reference to the control of the property. Appellees gave evidence which contradictd the minutes introduced by appellant, showing the provision has been adopted by a majority vote of, 12 to 5. The appellees had a property right involved, including the question of whether they could be cast in damages. There is no suggestion that appellees had any remedies which they should resort to within the Club organization. We cannot hold that appellees could not introduce evidence that, the minutes to the contrary notwithstanding, the fact was that the provision failed of adoption by a two-thirds majority in that the vote was 9 for and 8 against. There were facts and circumstances which could be regarded by the trial court as corroborating such claim, among which was the action of the 8 members. While only one witness testified for appellees below, it is inferable from statements appearing in the Statement of Facts that a group of those who voted in the minority were at the trial.

There were positions taken by the two witnesses that testified which, so far as this record goes, are matters to be settled either by other suits, or by action within the organization. Whether the "new" members had been properly admitted is not a question which presents a question for a court to pass on where no property or civil right was involved, and there seems to have been no formal action in the Club. Whether or not Mrs. Carlisle was expelled by the apparently ex parte proceedings is not made an issue by a suit claiming its invalidity. Internal disputes of Clubs will not ordinarily be entertained by courts unless or until civil or property rights of citizens are involved.

We hold that the take-nothing judgment was limited by appellant's petition, and determined nothing more than that appellant was not entitled to recover possession of the control of the clubhouse, or that appellant was entitled to an injunction restraining appellees from exercising control, or that appellant was entitled to require appellees to account, or that appellant was entitled to cast appellees in damages. The question of which group is the true club might become a justiciable question after the Club remedies have been exhausted, and by a suit involving property rights, supported by evidence of such property rights.

It is true that the Club has a provision to the effect that a member shall be automatically dropped when the Club dues are not paid. But mere evidence that the "old" members did not pay dues to the officers of the "new" group would not in and of itself determine that they had ceased to be members. Indeed, the doubt which exists at the present time as to whom to pay dues might well excuse all members from paying any dues while this question remains unsettled.

We hold that no reversible error has been shown, that the take-nothing judgment should be affirmed, and it is so ordered.