Charles Leo RACHFORD, Executor of the Estate of Helen Anna Fox Rachford, etc., Deceased, Plaintiff,

v.

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, a Corporation, Defendant.

No. 381–59.

United States District Court
S. D. California,
Central Division.

April 29, 1960.

Barrick, Poole & Olson, Pasadena, Cal., for plaintiff.

Dryden, Harrington, Horgan & Swartz, Los Angeles, Cal., for defendant.

HARRISON, District Judge.

This is an action by the plaintiff, as executor of the estate of Helen Anna Rachford, based upon a group accident insurance policy issued by the defendant to the National Education Association. The sole issue in this case is whether Mrs. Rachford was within the group of persons insured under this policy. Jurisdiction of this court is based on diversity of citizenship, 28 U.S.C.A. § 1332. Plaintiff is a citizen of California and the defendant is incorporated in and has its

principal place of business in Pennsylvania.

The group accident policy in a typewritten portion thereof defined persons within the insured group as:

"1. Officers and employees of the National Education Association and its departments.

"2. Any member of the Association travelling at the invitation of the National Education Association or its departments."

Plaintiff first contends that Mrs. Rachford was an officer of the Department of Audio-Visual Instruction (Hereinafter sometimes referred to as "DAVI"), a department of the National Education Association (hereinafter sometimes referred to as "NEA"), and within the coverage afforded by classification 1 of the policy, supra.

The decedent, Mrs. Rachford, was director of audio-visual instruction for the Los Angeles County Schools. For a number of years she had been active in the national affairs of the Department of Audio-Visual Instruction, an autonomous organization within the general framework of the NEA. In October, 1957, Mrs. Rachford was one of three persons nominated for the office of vice-president of DAVI. The nominating committee, as required by the DAVI Constitution, had obtained Mrs. Rachford's consent to stand for election and to serve, if elected. Ballots were distributed to members throughout the United States and the election was held in December, 1957. The results were certified in January, 1958, and Helen Anna Rachford was declared to have been elected as vice-president. On April 21, 1958, Mrs. Rachford was travelling to Minneapolis at the invitation of DAVI to be installed as vice-president, to attend a meeting of the board of directors as an observer prior to her installation, and to present materials on audio-visual instruction at the winter meeting of DAVI, which was being held in Minneapolis during the week of April 20, 1958. She died en route as a result of a collision of two airplanes near Las Vegas, Nevada.

Plaintiff urges that, because formal installation at the winter meeting was not a necessary prerequisite to assuming the position of vice-president, Mrs. Rachford had actually become vice-president in January, 1958, when the results of the election were certified.

An office is to be assumed in accordance with the terms of the organization's constitution and by-laws. The DAVI Constitution provided that newly elected officers "shall assume their responsibilities immediately after the close of the annual winter meeting" or, if no winter meeting is held, on the first of March. Article VIII, Section 3. Until the newly elected officer takes office at the close of the annual winter meeting, the officer elected the preceding year continues in office (Art. V, Sec. 3). Thus, on April 21, 1958, when Mrs. Rachford met her death, another person still held the office of vice-president. The close of the winter meeting came several days after April 21, 1958. Thus, irrespective of the necessity of formal installation to the office of vice-president, the decedent had not yet taken office, was not yet able to take office under the provisions of the constitution, and remained an officer-elect.

Plaintiff next urges that the term "officers" should be broadly construed to include all kinds of officers, officers-elect, and ex-officers. The general rule is, as stated in Continental Casualty Co. v. Phoenix Construction Co., 1956, 46 Cal.2d 423, 296 P.2d 801, 57 A.L.R. 2d 914, that when the language is used by the insurer in a printed policy that is uncertain any reasonable doubt will be resolved against the insurer and the language will be taken in its most inclusive sense for the benefit of the insured. While the word "officers" standing alone may be uncertain or ambiguous, when it is found in a contract, courts attempt to give it the meaning understood by the parties when entering the contract. General Casualty Company of America v. Azteca Films, Inc., 9 Cir., 278 F.2d 161. This is especially true when a typewritten portion of the policy, agreed upon

and added by the parties, is being considered. The court's primary concern, then, is to ascertain and carry out the intention of the parties.

■ The constitutions and by-laws of NEA and its departments provide the basis for determining the meaning of the term "officers". The DAVI Constitution, it should be noted, differentiates between officers and newly elected officers (or officers-elect). In construing a contract, language is to be given its ordinary meaning. An "officer" is defined as one who holds office or is invested with an office. An "officer-elect" is defined as one who has been chosen for an office, but has not yet been inducted into it. Webster's New International Dictionary, 2d ed. The two terms represent distinct meanings. They represent distinct statuses.

■ The policy speaks only of "officers". This term, given its ordinary meaning, cannot be interpreted as including "officers-elect". If the court were to find that officers-elect were insured, this would be tantamount to rewriting the contract, which a court cannot do. General Casualty Company of America v. Azteca Films, Inc., supra. A court will not indulge in a forced construction of language so as to impose liability on the insurer which it had not assumed. New York Life Ins. Co. v. Hollender, 1951, 38 Cal.2d 73, 237 P.2d 510. To consider an office to be held by two persons, the office-holder and the officer-elect, is unrealistic and certainly was not within the intention of the parties. Certainly the policy cannot be interpreted ·to double the risk of the insurer. If it was the intention to insure both the officers-elect as well as the officers, the policy would have so stated. By no stretch of the imagination can the policy be so interpreted.

It might be noted that had Mrs. Rachford actually assumed office as vice-president of DAVI, she would have exercised her authority as officer de facto. Membership of NEA is a prerequisite for holding a DAVI office. Mrs. Rachford was not a member of NEA at the time of her death, as will be hereinafter discussed.

At the time of her death, then, Mrs. Rachford was neither a de jure nor a de facto officer, but was simply an officer-elect. As such she was not insured under classification 1 of the policy as an officer.

Plaintiff's second contention is that Mrs. Rachford was covered under classification 2 of the policy, which insured

"any member of the Association travelling at the invitation of the National Education Association or its departments."

The evidence established that Mrs. Rachford was travelling at the invitation of the Department of Audio-Visual Instruction. Thus, the only issue is whether Mrs. Rachford was a member of the National Education Association.

Both NEA and DAVI had various classes of membership. Both organizations collected separate dues. By joining DAVI or any of the other departments of NEA a person did not automatically become a member of NEA. Mrs. Rachford had in fact paid her annual dues to DAVI for 1958 and was considered a member of DAVI.

The insurance policy provided coverage only for "members of the Association". It did not purport to provide coverage for persons who were members of one of the departments, but not members of the NEA.

The National Education Association is a large, complex, nation wide organization with some 600,000 to 700,000 members. The NEA By-Laws establish five classes of members: active, life, associate, retired and student. All classes of membership require the payment of annual dues, except life membership which requires a lump sum payment. Mrs. Rachford was eligible for NEA membership, as she was actively engaged in the profession of teaching (NEA By-Laws, Art. I, Sec. 1). She had in fact been a member of NEA for many years, but had apparently dropped her membership during 1956–1957 when the annual dues of

NEA were increased from $5 to $10 per year. Some 80,000 persons discontinued NEA membership at that time.

The NEA By-Laws (Article I, Section 9) provide:

"The membership year shall be from September 1 to August 31. Any member who is in default in the payment of dues for a period of four months shall be deemed delinquent and shall be dropped from membership."

It is admitted by plaintiff that Mrs. Rachford had not paid annual membership dues to the NEA for at least two years prior to her death. She was not a life member. Her name had been dropped from the membership lists of the NEA in accordance with the above quoted by-law provision.

Article I, Section 9, NEA By-Laws, supra, terminated membership four months after the close of the membership year. It did not merely suspend membership pending the payment of accrued dues. After termination of membership, on payment of annual dues the person became a new member, not a reinstated member.

Mrs. Rachford, like anyone else becoming a member of an organization, was charged with knowledge of and was subject to the regulations concerning membership and the rights of members, as set forth in the charter, constitution and by-laws. Weber v. Marine Cooks' & Stewards' Ass'n, 1949, 93 Cal. App.2d 327, 208 P.2d 1009; 4 Am.Jur., Associations & Clubs, § 12. Thus, Mrs. Rachford was subject to the termination of membership provision of the by-laws. She was no longer a member of NEA.

De facto membership in NEA is claimed for Mrs. Rachford, because of her prominence in the affairs of DAVI. The de facto concept is applied to someone who is acting under color or office of authority. In re Globe Drug Co., 9 Cir., 1939, 104 F.2d 114. It exists to protect third persons and the public when dealing with such persons. Huff v. Sauer, 1955, 243 Minn. 425, 68 N.W.2d 252.

Here no representations to the public are involved. Rather questions of internal organization are presented which must be resolved in accordance with the constitution and by-laws of NEA. This is not a place where the de facto concept can be applied. Furthermore, it must be noted that while Mrs. Rachford might have assumed the office of DAVI vice-president, she would have served DAVI as a de facto officer. DAVI required that all its officers be members of the NEA. Mrs. Rachford had not met this requirement. To serve as an officer de facto of DAVI would not cure the failure to pay NEA dues. The status of de facto vice-president of DAVI would not make the decedent a de facto member of NEA.

Plaintiff, after Mrs. Rachford's death, presumably acting as executor of the estate, tendered to the NEA the amount of the annual dues for 1956–1957 and 1957–1958, which tender the NEA refused to accept. While payment of membership dues at any time during the membership year apparently gave a person the status of a member for the entire year, if the plaintiff's tender.had been accepted, then plaintiff, as executor of the estate (or individually), would have become a member of NEA. This would not have made Mrs. Rachford a member for those two years.

The term "member" must be interpreted in the context in which it is used. General Casualty Company of America v. Azteca Films, Inc., 9 Cir., 1960, 278 F.2d 161, supra. Membership is based on the regulations of the association and constitutes a contract between the organization and the individual. 5 Cal.Jur.2d, Associations and Clubs, § 12. The NEA defines membership explicitly. No ambiguity can be found in the use of the phrase "member of the Association", and, as stated by the court in Matsuo Yoshida v. Liberty Mutual Insurance Co., 9 Cir., 1957, 240 F.2d 824, 826,

" * * * a court cannot and should not do violence to the plain terms of a contract by artificially creating ambiguity where none exists."

880

The decedent, then, was not a member of the NEA. No means other than the payment of dues existed by which she could have become a member. She had not paid dues. De facto membership did not exist. The coverage of the insurance policy was stated in unambiguous terms. The court is under no compulsion to strain and twist the language of the policy to impose liability that does not otherwise exist. *Matsuo Yoshida v. Liberty Mutual Insurance Co.*, supra.

Defendant is entitled to judgment in its favor and is directed to submit proposed findings and judgment in accordance with the opinions herein expressed.