SARAH DANA POST, executrix,[1] vs. BELMONT COUNTRY
CLUB, INC.

No. 02-P-304.

Middlesex. May 16, 2003. - March 19, 2004.

Present: PERRETTA, GELINAS, & DUFFLY, JJ.

*Practice, Civil,* Summary judgment. *Voluntary Association. Release. Indemnity.*
*Contract,* Release from liability, Indemnity. *Limitations, Statute of.*

A Superior Court judge properly ruled that the estate of a member of the
defendant country club (club) was required by an indemnity clause in the
club's handbook to indemnify the club for losses sustained as a result of an
injury the decedent incurred while driving a golf cart on the club's course
which resulted in his death, where the decedent was contractually bound
by the club's rules and by-laws; additionally, such agreement was neither
ambiguous nor a contract of adhesion requiring strict construction against
the club as drafter, and the clause's nature as indemnifying a tortfeasor did
not support a strict construction of that clause against the club. [646-652]

In a wrongful death suit including claims for conscious pain and suffering on
the part of a country club member who died from injuries incurred while
driving a golf cart on the club's course, the club's counterclaim for
indemnification, based on a provision in the club's handbook, was not
barred by G. L. c. 197 § 9, where the statute was one of limitation, not a
statute of repose, and the club's filing of the counterclaim related back to
the filing of the complaint, within one year of the decedent's death, and
was thus timely. [653-654]

CIVIL ACTION commenced in the Superior Court Department on
December 2, 1997.

Motions for summary judgment were heard by *Julian T.*
*Houston,* J., and *Regina L. Quinlan,* J., and a motion for entry
of judgment was heard by *Houston,* J.

*Richard John Shea* for the plaintiff.

*Joanne L. Goulka* for the defendant.

GELINAS, J. The estate of John Post (estate) appeals two grants

[1] Of the estate of John Post.

of summary judgment in favor of the Belmont Country Club (club). A first motion for summary judgment, and later an amended motion for summary judgment, resulted in rulings that an indemnity clause contained in the club's handbook required the estate to indemnify the club for losses sustained as a result of an injury to John Post that resulted in his death. We affirm.

The facts are not in issue. Post was a ten year member of the club. The club's golf course was under reconstruction, and ropes had been set to guide carts along temporary paths. While driving his golf cart along one of these paths, Post drove the cart into a rope. An iron pin, used to anchor the rope in place, became dislodged and struck Post in the head. Unlike other ropes on the course, the rope in question was not clearly marked. The blow caused serious injury. Post succumbed to the injury a few days later.

The estate brought suit for wrongful death and for conscious pain and suffering. The club counterclaimed under the indemnity clause. After some discovery and other preliminary matters, and while the club's motion for summary judgment on the indemnity question was pending, the club agreed to settle the estate's claims, paying the total sum of $4,500,000. The settlement specifically reserved the club's counterclaim for indemnification, but provided that any recovery was to be limited to Post's homeowner's policy both as to source and amount. The agreement and related documents released the estate, and, by implication, Post's heirs and next of kin, from any liability under the indemnity agreement.

The club claimed indemnity under a clause in the club's membership handbook that provided the following with respect to the use of golf carts:

> "Each person using a cart does so at his/her own risk. Each person renting or driving a cart is responsible for any personal injury or property damage caused, including without limitation, injury to him/herself and damage to the cart, and agrees to indemnify the Club against all loss, claims or expenses resulting from use of said cart."

*Discussion.* "Summary judgment is appropriate where there is no genuine issue of material fact, and when, viewing the

evidence in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law." *Gray* v. *Giroux*, 49 Mass. App. Ct. 436, 438 (2000). See Mass.R. Civ.P. 56(c), 365 Mass. 824 (1974). "[A] party moving for summary judgment in a case in which the opposing party [has] the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass.R. Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). The facts not being in dispute, interpretation of the indemnity clause is a question of law. See *USM Corp.* v. *Arthur D. Little Sys., Inc.*, 28 Mass. App. Ct. 108, 116 (1989) (where material facts are not in dispute, interpretation of contract is question of law for the court).

We conclude that in these circumstances, Post was bound by the release and indemnity clause, even though, as the estate argues, it was contained in a member's handbook among many other rules, regulations, and provisions; that the section was not highlighted, as other sections of the handbook were; and that there was no evidence that Post had ever read the provision or knew of its existence, either before he became a member of the club, or during the ten years of his membership.

When Post became a member of the club, he entered into an obligation, in the nature of a contract, to be bound by the club's rules and by-laws, and accepted all obligations that were not inconsistent with law. *Snay* v. *Lovely*, 276 Mass. 159, 163 (1931) ("by becoming a member of the union and agreeing to support it, [plaintiff] entered into an obligation in the nature of a contract to become bound by its constitution and governing rules so far as not inconsistent with controlling principles of law"). *Sullivan* v. *Barrows*, 303 Mass. 197, 201 (1939) ("in becoming a member of the local [union], [plaintiff] had entered into a contract. The terms and conditions of the contract were expressed by the constitution and by-laws, which defined not only the benefits and privileges secured but also the duties and obligations assumed"). *Comstock* v. *Dewey*, 323 Mass. 583, 587-588 (1949) ("[o]ne becoming a member of the club assumed an obligation

in the nature of a contract to become bound by such a rule or by-law in so far as it was not inconsistent with some principle of law"). Other jurisdictions are in accord, see, e.g., *Rowland* v. *Union Hills Country Club*, 157 Ariz. 301, 304-305 (1988); *Stewart* v. *Monongahela Valley Country Club*, 177 Pa. Super. 632, 640 (1955); *Jeffersonian Club* v. *Waugh*, 217 S.W.2d 103, 107 (Tex. Civ. App. 1949).

Citing to *Walsh* v. *Telesector Resources Group, Inc.*, 40 Mass. App. Ct. 227, 233 (1996) ("a party cannot be bound to essential and material terms of a contract to which he has not agreed"), the estate argues that there is no evidence that Post assented to the clause requiring release and indemnity, and therefor neither he nor his estate should be bound. We conclude that in becoming a member of the club, Post should be charged with knowledge of the Club's by-laws and rules and regulations, and that his actual knowledge of the provision need not be shown in order that the provision apply. Decisions both in Massachusetts and elsewhere support this conclusion. In Massachusetts, a member of an incorporated co-operative banking society is charged with knowledge of the society's by-laws, *Richardson* v. *Devine*, 193 Mass. 336, 338 (1907), as is a stockholder with respect to provisions as to preference contained in an agreement of association, *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.*, 282 Mass. 367, 375 (1933). Other jurisdictions hold that a member of an unincorporated society is presumed to know, and to be bound by, the society's constitution and by-laws, and that the presumption of knowledge is conclusive. See, e.g., *Rachford* v. *Indemnity Ins. Co. of N. America*, 183 F. Supp. 875, 879 (1960) (member of organization was charged with "knowledge of and was subject to the regulations concerning membership and the rights of members, as set forth in the charter, constitution and by-laws"); *Pharmacists & Retail Drug Store Emp. Union, Local 330* v. *Lake Hills Drug Co.*, 255 F. Supp. 910, 912 (1964) ("members of a voluntary unincorporated association are presumed to have knowledge of and are bound by the constitution and by-laws of the association").

Some jurisdictions require that there be notice of any provision in a by-law or regulation which provides indemnity. See, e.g., *Blanc* v. *Windham Mountain Club, Inc.*, 115 Misc.2d 404,

409 (N.Y. Sup. Ct. 1982) (club members must be afforded notice of by-law providing that they indemnify club for injuries to which they were to be held accountable).[2] As described below, Massachusetts declines to apply this rule.

Nor do we think, as urged by the estate, that should Post be bound by the provisions of the club's constitution and by-laws, the contract containing the release and indemnity agreement was one of adhesion, and as such should be strictly construed against the club. While there is no evidence, and it is highly unlikely, that Post negotiated over the terms of membership, cf. *Lechmere Tire & Sales Co.* v. *Burwick*, 360 Mass. 718, 720-721 (1972); *Chase Commercial Corp.* v. *Owen*, 32 Mass. App. Ct. 248, 251 (1992); Rakoff, Contracts of Adhesion: An Essay in Reconstruction, 96 Harv. L. Rev. 1173, 1177 (1983), the contract Post entered was one not only with the club, but with his fellow members. The contract, with the provision regarding release and indemnification, was adopted by the membership for their mutual benefit, Post included. Given the extent of the membership and the expected use of carts during the golfing season, with the possibility that others might be injured and lay claim against the club, the indemnity clause was in fact more likely to have worked in Post's favor than not, shielding him and the other members from increased dues related to payment of claims or additional insurance costs. Further, the membership collectively retained the power to change or eliminate the provision, and, as the trial judge found, as a member, Post had the ability to work and vote for change, should he have been so inclined. The membership had, in effect, the constant op-

---

[2]The New York court also held that any indemnification of a club for injuries caused to the indemnitor by the club's negligence was void as against public policy under a statute, General Obligations Law § 5-326, that provided "Every covenant, agreement or understanding in or in connection with, or collateral to, any contract, membership application, ticket of admission or similar writing, entered into between the owner or operator of any pool, gymnasium, place of amusement or recreation, or similar establishment and the user of such facilities, pursuant to which such owner or operator receives a fee or other compensation for the use of such facilities, which exempts the said owner or operator from liability for damages caused by or resulting from the negligence of the owner, operator or person in charge of such establishment, or their agents, servants or employees, shall be deemed to be void as against public policy and wholly unenforceable." Massachusetts has no such statute.

portunity to negotiate changes in the membership agreement, including the indemnity clause. Because members retain the right to change those terms by majority vote, or the election of new officers, with the constant opportunity to "negotiate" changes in the membership agreement, the contract here differs substantially from that where a consumer, in order to acquire needed goods and services, is required to accept its terms on a take it or leave it basis. Other jurisdictions are in accord, concluding that contractual agreements with respect to a club's by-laws, rules and regulations, established when a person joins a club or association, are not contracts of adhesion requiring strict construction. See, e.g., *Cruise* v. *Castleton, Inc.* 449 F. Supp. 564, 570 (1978); *Bennett* v. *Appaloosa Horse Club*, 201 Ariz. 372, 376 (2001).

Having determined that the provision in question constitutes a contractual obligation of Post, and need not be strictly construed against the club, the remaining issues are governed in the main by the case of *Shea* v. *Bay State Gas Co.*, 383 Mass. 218, 222 (1981). We consider the estate's remaining arguments in the light of that case.

The estate argues that the provision also requires strict construction as it is a contract involving the indemnification of a tortfeasor, and as such absolves the club of any liability for its own negligence resulting in injury to the indemnitor. Other jurisdictions provide for strictly construing such provisions, that any ambiguity be decided against the indemnitee, and that any such absolution be in clear and uncertain terms. See *American Bldg. Maintenance Co.* v. *L'Enfant Plaza Properties, Inc.*, 655 A.2d 858, 861 (D.C. 1995) ("indemnity agreements are rarely to be implied and always to be strictly construed"); *Valerio* v. *R.& R. Constr. Co.*, 20 Ill. App. 3d 48, 52 (1974); *Polozola* v. *Garlock, Inc.*, 343 So. 2d 1000, 1003 (La. 1977) (holding a contract of indemnity whereby the indemnitee is indemnified against consequences of his own negligence are to be strictly construed); *Bogatzki* v. *Hoffman*, 430 N.W.2d 841, 845 (Minn. Ct. App. 1988) (concluding indemnity agreements are to be strictly construed); *Heimbach* v. *Metropolitan Transp. Authy.*, 75 N.Y.2d 387, 392 (1990) (there is no liability to indemnify unless it is plainly spelled out in the contract); *Rosado* v. *Proc-*

*tor & Schwartz, Inc.*, 106 A.D.2d 27, 28 (N.Y. 1984); *Linkowski* v. *General Tire & Rubber Co.*, 53 Ohio App. 2d 56, 60 (1977).

In Massachusetts, where there is nothing to require strict construction of the clause under general contract rules, "[c]ontracts of indemnity are to be fairly and reasonably construed in order to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished." *Shea* v. *Bay State Gas Co.*, 383 Mass. at 222, quoting from *New York, N.H. & H.R.R.* v. *Walworth Co.*, 340 Mass. 1, 3 (1959). "By the overwhelming weight of authority, something less than an express reference in the contract to losses from the indemnitee's negligence as indemnifiable will suffice to make them so if the intent otherwise sufficiently appears from language and circumstances." *Shea* v. *Bay State Gas Co.*, *supra* at 222, quoting from *Stern* v. *Larocca*, 49 N.J. Super. 496, 503-504 (1958). See *United States* v. *Seckinger*, 397 U.S. 203, 213 n.17 (1970) ("a clause that is intended to encompass indemnification for the indemnitee's negligence . . . [need not] explicitly state that indemnification extends to injuries occasioned by the indemnitee's negligence"). See also *Speers* v. *H.P. Hood, Inc.*, 22 Mass. App. Ct. 598, 600 (1986). This rule of construction recognizes that "[c]ontract interpretation is largely an individualized process, with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties' intention." *Shea* v. *Bay State Gas Co.*, *supra* at 222-223, quoting from *United States* v. *Seckinger*, 397 U.S. 203, 213 n.17 (1970). Indemnification of a tortfeasor for damages caused by its own negligence is not illegal, and is a question of the intent of the parties. *Ortolano* v. *U-Dryvit Auto Rental Co.*, 296 Mass. 439 (1937). We think that the first motion judge properly construed the contract with reference to the situation of the parties when they made it, with proper regard to the objects they sought to accomplish. See *Bryne* v. *Gloucester*, 297 Mass. 156, 158 (1937); *Shea* v. *Bay State Gas Co.*, 383 Mass. at 223.

Nor do we think the clause ambiguous, as the estate argues, such that it must be construed against the club as drafter. We construe all words that are plain and free from ambiguity. See *Suffolk Const. Co.* v. *Lanco Scaffolding Co.*, 47 Mass. App. Ct.

726, 729 (1999). Contract language is ambiguous where "an agreement's terms are inconsistent on their face or where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and obligations undertaken." *Fashion House, Inc.* v. *K Mart Corp.*, 892 F.2d 1076, 1083 (1st Cir. 1989). "However, an ambiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other's." *Jefferson Ins. Co. of N.Y.* v. *Holyoke*, 23 Mass. App. Ct. 472, 475 (1987). According to the plain language of the clause, members were to use the carts entirely at their own risk, and members further "agree[d] to indemnify the Club against all loss, claims or expenses resulting from use of said cart." We agree with the club that the contract of indemnity here was to be "fairly and reasonably construed in order to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished," *Shea* v. *Bay State Gas Co.*, 383 Mass. at 222, quoting from *New York, N.H. & H.R.R.* v. *Walworth Co.*, 340 Mass. at 3, and that the plain language of the clause, as the first motion judge found, required Post to indemnify the Club for all loss, claims, or expenses resulting from his use of the cart. This language would include any amounts paid on account of a wrongful death action arising from his use of the cart.

The estate further argues, on authority of *Beausoleil's Case*, 321 Mass. 344 (1947), that the indemnification provision had the effect of barring recovery on behalf of the plaintiff, effectively providing a release to the club for any wrongful death action brought on behalf of Post's heirs. This result, the estate contends, is prohibited, as a wrongful death action is not within the competence of a living person to release, as the action belongs properly to the decedent's heirs. Whatever the merits of this argument, we need not reach the issue. The club and the estate have agreed that recovery shall be limited, both as to source and amount, to insurance proceeds available under Post's homeowner's policy.[3] The net effect here is that the claims for

---

[3]This is different from saying, as the estate argues, that there are insurance proceeds available to cover the estate's liability; here the club has released the estate from any liability resulting from the indemnity clause except to the

damages and wrongful death remain intact and are not released.

There can be little doubt that the contract of indemnity contained in the clause survived Post's death and became an obligation of his estate. See *Kearney* v. *Mechanics Natl. Bank of Worcester*, 343 Mass. 699, 702 (1962) (promise to save petitioner harmless from liability on mortgage held to be indemnity contract enforceable against decedent's estate); *Hays* v. *Mobil Oil Corp.*, 736 F. Supp. 387, 392-393 (D. Mass. 1990), aff'd. in part, vacated in part, 930 F.2d 96 (1st Cir. 1991) (agreement to indemnify defendant contained in plaintiff's franchise and loan agreements worked to bar claim of estate against defendant oil company for contribution for environmental clean up). This is true even though the claim upon which indemnity was sought did not arise until the death of Post, the indemnitor. See *New England Trust Co.* v. *Spaulding*, 310 Mass. 424, 429 (1941) (one may make a contract to be performed after the maker's death and such a contract will be binding upon the estate). To the extent the estate's settlement agreement with the club, which kept the counterclaim against it alive, was limited to proceeds from Post's homeowner's insurance, we think the indemnity agreement requires payment to the club.

We think that the estate's contention, made in an amended motion for summary judgment heard by a different judge, that the club's counterclaim is barred by G. L. c. 197, § 9, likewise lacks merit. Subsequent to the denial of its first motion for summary judgment, the estate filed an amended motion, asserting that the provisions of G. L. c. 197, § 9, as amended by St. 1989, c. 329, § 5,[4] barred the club's counterclaim, as the

extent that the homeowner's policy provides coverage. By expressly limiting recovery, both as to source and amount, to the insurance proceeds, the club also effectively released the heirs from any claim under the indemnity.

[4]The statute provides in part: "(a) Except as provided in this chapter, an executor or administrator shall not be held to answer to an action by a creditor of the deceased unless such action is commenced within one year after the date of death of the deceased and unless, before the expiration of such period, the process in such action has been served by delivery in hand upon such executor or administrator or service thereof accepted by him or a notice stating the name of the estate, the name and address of the creditor, the amount of the claim and the court in which the action has been brought has been filed in the proper registry of probate."

counterclaim had not been filed within one year of Post's death.[5] On authority of *Department of Pub. Welfare* v. *Anderson*, 377 Mass. 23 (1979), the estate contends that G. L. c. 197, § 9, is a statute of repose, constituting an absolute bar to the counterclaim. We think the argument misplaced and agree with the second motion judge that the statute is one of limitation, and as such, the counterclaim relates back to December, 1997, the date of the estate's complaint against the club for wrongful death and conscious pain and suffering.[6] See *Flannery* v. *Flannery*, 429 Mass. 55, 57 (1999) (referring to statute as a statute of limitation). There is no language in the statute indicating a legislative intent to create a statute of repose, contrast G. L. c. 260, § 2B, and G. L. c. 231, § 60D, as amended, St. 1986, c. 351, § 23, which contain the language "but in no event shall actions be commenced more than seven years after occurrence of the act . . . ." We think that under the provision of G. L. c. 260, § 36[7] the filing of the counterclaim related back to the filing of the complaint, within one year of Post's death.

*Judgments affirmed.*

---

[5] Post died on May 2, 1997, and the counterclaim was not filed until July of 1998.

[6] The club argues that the issue is waived, as the estate did not raise the defense of the statute, either as one of limitation or repose, in its answer to the counterclaim. We consider the issue properly waived and preserved as the second motion judge exercised discretion and considered the issue at the hearing on summary judgment.

[7] The statute provides in relevant part: "The provisions of law relative to limitations of actions shall apply to a counterclaim by the defendant. The time of such limitation shall be computed as if an action had been commenced therefor at the time the plaintiff's action was commenced."