**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 09-1730

IN RE: PHILIP R. MARTIN

TRAVELERS INSURANCE CO., ET AL.,

Plaintiffs, Appellants,

v.

METROPOLITAN YACHT CLUB, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Robert B. Collings, U.S. Magistrate Judge]

Before

Boudin, Circuit Judge,
Souter, Associate Justice,[*]
and Howard, Circuit Judge.

Steven E. Kramer for appellant Donald Salvucci, Robert E. Kiely, with whom Regan & Kiely LLP was on brief, for appellants Travelers Insurance Co. and International Marine Underwriters, and Brian Keane, with whom The Kaplan/Bond Group was on brief, for appellant Philip R. Martin.
David J. Farrell, Jr., with whom Admiralty Office of David J. Farrell, Jr. was on brief, for appellees.

August 5, 2010

---

[*]    The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice**.  The appellee Metropolitan Yacht Club, Inc. is a non-profit association of voluntary members. Appellant Phillip R. Martin and other members of the Club applied and paid for winter wet storage of their boats on Club premises, where a fire that broke out there destroyed several boats and damaged others.  State investigators concluded that the fire originated in faulty wiring beneath the dock adjacent to Martin's boat; but Martin, concerned about possible claims against him, petitioned the district court for a decree exonerating him or limiting his liability under maritime law, 46 U.S.C. § 30501 et seq.  The judicial proceedings ballooned as more Club members with damaged boats and various insurers joined in, asserting claims against Martin, the Club, or both.

Eventually the Club moved for summary judgment that it was liable to no one, including Martin, under governing maritime law, owing to the fact that members were subject to the following Club by-law:

> "The Club expressly absolves itself . . . and each member agrees that the Club may absolve itself from any liability for damages to any boat, property, appurtenances and contents thereof  .  .  .  .  Said absolution from liability shall include but not be limited to: (a) Fire; (b) Theft; (c) Vandalism; (d) Water Damage; (e) Negligent acts or omissions."

A magistrate judge granted the motion, and Martin and others brought this interlocutory appeal under 28 U.S.C. § 1292(a)(3).  On

-2-

de novo review, Rosario v. Dept. of Army, 607 F.3d 241, 246 (1st Cir. 2010), we affirm.

There is no claim that the Club was at greater fault than simple negligence, so the issue is over the effectiveness of the by-law term of exculpation from negligence liability for property damage to a Club member. No maritime case in this circuit is directly on point, although the leading opinion (dealing with exculpatory language in commercial circumstances) addresses two points of maritime law of interest here: (1) "an exculpatory clause limited to barring liability for ordinary negligence would be valid, assuming it were not inflicted by a monopolist or one with greatly superior bargaining power"; and (2) a court may sever or divide an overbroad clause, "retaining those provisions or applications of them that are permissible." Broadley v. Mashpee Neck Marina, Inc., 471 F. 3d 272, 274, 275 (1st Cir. 2006). While the court did not sever the clause then at issue, it observed that "[a]ny competent lawyer could write a straightforward exclusion of liability for negligence that we would sustain." Id. at 276.

Our road to decision is not as short as this considered dictum might suggest, however, given some details said to be in tension with a "straightforward" classification for the exclusion here. The owners and insurers make much of the fact that the exculpation clause is contained in a by-law that was bargained for neither when the boat owners joined the Club, nor when they applied

-3-

for winter storage of the boats.  They portray themselves as the weaker contracting parties outmatched by the Club's "greatly superior bargaining power."  But it would be unfair to compare the clause here either to one inflicted, or to one devised by a monopolist to extract a benefit from a helpless counterparty.  As an initial matter, there is no monopoly on boat storage; commercial marinas may be found nearby the Club's premises.  Yet there is a more fundamental feature of this case in the relationship between an association and its members that makes the Club's initial bargaining power less significant than it would be in a standard commercial transaction.  The limit on liability is one of several terms of a compact of the members with each other to limit the cost of membership,[1] and every prospective member who joins immediately shares in its benefits.  And by the very nature of such a compact, the by-laws are voted on by the Club membership, and the limitation on liability is open to revision by Club members (never attempted by the boat owners here).  Membership agreements of voluntary associations like the Club were not what the Broadley panel had in mind when it spoke of monopolies and other situations of uneven bargaining power.[2]

---

[1] Another is the requirement that all members annually contribute eight hours of personal labor (or pay the Club $25.00 for each hour not worked).

[2] Cf. Post v. Belmont Country Club, Inc., 60 Mass. App. Ct. 645, 649-50, 805 N.E.2d 63, 68-69 (2004) (noting that the indemnity clause in a club's by-laws "was in fact more likely to have worked

-4-

Objection is also made to the omission of the by-law from the written terms of the "Winter Storage Application" itself (in contrast to the standard summer slip rental form). But the appellants' attempt to rely exclusively on the text of the application is misplaced. The by-laws govern the relationship between its members and the Club, and these make binding upon all members a rule specifically governing application for winter storage.[3] It is simply not reasonable to assert that submission of such an application proposed a contractual relationship wholly distinct from membership. Nor do the appellants fare any better with their suggestion that the Club was deficient in bringing the by-laws to members' notice at any time. Since there is no question that the by-laws were readily available, no more need be said, given our agreement with the Massachusetts common law rule that a member generally is responsible for knowing his organization's by-laws. Post v. Belmont Country Club, Inc., 60 Mass. App. Ct. 645, 648-49, 805 N.E.2d 63, 67-68 (2004).

---

in [an individual member's favor] than not, shielding him and the other members from increased dues related to payment of claims or additional insurance costs" and reasoning that "[b]ecause members retain . . . constant opportunity to 'negotiate' changes in the membership agreement, [such a contract] differs substantially from that where a consumer, in order to acquire needed goods and services, is required to accept its terms on a take it or leave it basis").

[3] That rule, consistent with the limitation of liability by-law, provides (among other things) that boat owners assume the risk of property damage.

Next, the objectors point out that the exculpatory clause here may be read as going beyond what the court in Broadley thought was acceptable, since the "absolution" is not limited to simple negligence; it also applies by reference to specific sources of damage (fire, etc.) without reference to degree of fault. While this is true, any supposedly excessive favor to the Club may be pared down by a process of severance so long as the clause was devised in good faith and obtained in accordance with reasonable standards of fair dealing. Broadley, 471 F.2d at 275 (quoting Restatement (Second) of Contracts § 184). Both conditions are satisfied here. What has already been said about the nature and purpose of the amendable by-law answers any question about good faith, and the consistency with fair dealing is shown by its clarity in expressly excluding ordinary negligence, whatever else it may purport to do. See id. (clear and specific disclaimer of negligence liability would be likely to convey an effective warning).

Remaining arguments based on standards for reforming defective contract documents are beside the point here. The Club does not seek reformation for failure of a document to express the true agreement, and the by-law is not just another conventional contract between parties bound solely by commercial terms of agreement. Indeed, the very fact that the contractual relationship it governs is between an association and its voluntary members so

-6-

far distinguishes this case from one (such as <u>Broadley</u>) involving a purely business relationship as to admit of a question whether a membership corporation in circumstances like these may effectively contract out of liability for greater fault than ordinary negligence. But that issue is not before us.[4]

    <u>Affirmed</u>.

---

[4] Nor are there any issues about application of the by-law to contract as distinct from tort liability, or to the bailment relationship, matters ruled upon by the magistrate judge but not pursued here.