NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-401

ALEXANDER MIROPOLSKY & another[1]

vs.

WILLIAM CAMPBELL & another[2]; LAWRENCE BUCCI & another,[3] third-party defendants.[4]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs, Alexander and Larissa Miropolsky

(Miropolskys), appeal from so much of a Superior Court judgment

that denied their posttrial petition for attorney's fees. The

Miropolskys requested fees pursuant to a contractual

indemnification provision contained within a "Declaration of

Reservation of Easements and Roadways and Common Driveways"

---

[1] Larissa Miropolsky.

[2] Lindsey Campbell.

[3] Pamela Bucci.

[4] The Buccis were the plaintiffs in a related action that was consolidated with the present action for trial in the Superior Court. The Buccis, however, are not parties to the present appeal.

(declaration). On appeal, the Miropolskys contend that they are entitled to attorney's fees in connection with their breach of easement claim against the defendants, William and Lindsey Campbell (Campbells). Because we conclude that the indemnification provision was not intended to apply to direct claims, we affirm.

Background. This appeal arises from a dispute regarding a declaration for the Hummingbird Lane Subdivision (subdivision). The Miropolskys are the owners and full-time residents of a house in the subdivision now known as 1 Hummingbird Lane (Miropolsky property). The subdivision includes two other homes, one on Lot 3 owned by the Campbells, and the other on Lot 2 owned by the Buccis (collectively, the "Remaining Land"). The Campbells are the developers of the subdivision and in January 2018, they submitted an application to the Westford planning board for approval of a definitive subdivision plan to construct the subdivision.

The Miropolsky property is a parcel subject to the declaration, created by the original owners of the property on which the subdivision was being built.[5] The declaration created a fifty-foot-wide access and utility easement running across the

---

[5] Neither the Miropolskys nor the Campbells were involved in the creation of the declaration.

Miropolsky property, called the "Access Easement Area."[6] Among

other things, the declaration grants a right of way to access

the subdivision.

Paragraph 2 of the declaration is entitled

"Indemnification" and obligates the Campbells and the Buccis, as

owners of the Remaining Land, to:

> "[R]estore any land of the servient estate disturbed in the
> exercise of rights granted hereunder promptly and in a
> reasonable fashion consistent with the surrounding land and
> free of refuse.  Improvements to the Access Easement Area
> shall be completed within twelve (12) months of the initial
> initiation of construction within the Access Easement Area
> and shall be performed in a good and workmanlike manner so
> as to minimize all disturbance to the use and enjoyment of
> the [Miropolsky property]; and if vehicle access or egress
> to and from the [Miropolsky property] has to be temporarily
> interrupted for construction purposes, the occupants of the
> [Miropolsky property] shall be provided with at least seven
> (7) days written notice and such temporary interruptions
> shall be limited to a combined period not to exceed 48
> hours."

Within that same paragraph, the declaration contains an

indemnification provision, which provides that

> "The owner or owners of the Remaining Land hereby agrees to
> defend, indemnify and hold harmless the owner of the
> [Miropolsky property] for all costs, losses, expenses and
> attorney's fees associated with any claim of damage to
> personal property, injury or death to persons resulting
> from the exercise of the easements granted herein and for
> entry upon and activities performed within the Access
> Easement Area."

---

[6] The "Access Easement Area" is defined in the easement as a "Proposed 50' Wide Access & Utility Easement" depicted on an August 2014 "Plan of Land-ANR, 17 & 19 Lawson Road, Westford."

3

In early August 2018, the Campbells began construction on the subdivision. The work included improvements and alterations to the Access Easement Area, the roadway through the area, stormwater drainage, and other excavation site work. The work was not completed until July 2021, after the twelve-month requirement delineated in paragraph 2 of the declaration.

In September of 2019, the Miropolskys filed an action in the Superior Court to enforce their rights under the declaration. Following a three-week trial the jury found in favor of the Miropolskys on their breach of easement claim, and against the Campbells on their breach of easement counterclaim.[7]

On October 6, 2022, the Miropolskys filed a posttrial petition for attorney's fees and costs with the Superior Court. On October 19, 2022, the judge denied the Miropolskys' petition because "the indemnification clause does not apply to first party claims like this one." Judgment entered on October 21, 2022, and the Miropolskys timely appealed.

---

[7] The Miropolskys and Campbells brought additional claims at trial. At oral argument, however, the Miropolskys clarified that the only claims relevant to this appeal are the breach of easement claim brought by the Miropolskys, and the breach of easement counterclaim brought by the Campbells (insofar as the Miropolskys claim that they were forced to pay added attorney's fees to defend against that counterclaim).

4

Discussion. The Miropolskys contend that the judge erred in denying their petition because the indemnification provision was intended to apply to direct claims. We disagree.

"Our traditional and usual approach to the award of attorney's fees for litigation has been to follow the 'American Rule': in the absence of statute, or court rule, we do not allow successful litigants to recover their attorney's fees and expenses." John T. Callahan & Sons, Inc. v. Worcester Ins. Co., 453 Mass. 447, 449 (2009). "The parties, however, may construct their agreement to provide for the payment of attorney's fees through clear and unambiguous language." K.G.M. Custom Homes, Inc. v. Prosky, 468 Mass. 247, 258 (2014).

The interpretation of an indemnity clause is a question of law for the court. See Post v. Belmont Country Club, Inc., 60 Mass. App. Ct. 645, 647 (2004). Under Massachusetts law, indemnity clauses "are not read with any bias in favor of the indemnitor and against the indemnitee; rather, such provisions are to be fairly and reasonably construed to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished." Urban Inv. & Dev. Co. v. Turner Constr. Co., 35 Mass. App. Ct. 100, 107 (1993). Massachusetts indemnity clauses are not necessarily limited to third-party claims. See Caldwell Tanks, Inc. v. Haley & Ward, Inc., 471 F.3d 210, 216

5

(1st Cir. 2006).  Rather, we interpret each indemnity contract on its own terms, "with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties' intention."  Shea v. Bay State Gas Co., 383 Mass. 218, 222-223 (1981), quoting United States v. Seckinger, 397 U.S. 203, 213 n.17 (1970).

Here, the language of the indemnification provision cannot be "fairly and reasonably construed" to include indemnification for attorney's fees in an action between the parties.  Whittle v. Pagani Bros. Constr. Co., 383 Mass. 796, 798 (1981).  The Miropolskys rely on language in the indemnification provision stating that the owner agrees to "defend, indemnify and hold harmless the owner of the [Miropolsky property] for all costs, losses, expenses and attorney's fees."  They place special emphasis on "all costs" as proof that the parties' intent was to apply the indemnification provision to a direct claim.  However, viewing the declaration as a whole, we conclude that the indemnification provision was not intended to apply to a direct claim.  This is so for various reasons.

We first note that although paragraph 2 is not a model of clarity, we are still required to determine the drafters' intent from the provision and the declaration itself.  Shea, 383 Mass. at 222-223.  As stated above, the indemnification provision

6

states, in relevant part, that the owner or owners of the "Remaining Land" agree to "indemnify and hold harmless the owner of the [Miropolsky Property] for all costs, losses, expenses and attorney's fees associated with any claim of damage to personal property . . . resulting from the exercise of the easements granted herein and for entry upon and activities performed within the Access Easement Area."  This language, fairly read, suggests that the indemnification provision was intended to apply to third parties who enter on and perform activities within the easement area, rather than to those who are parties to the declaration.  By contrast, the overbroad interpretation proffered by the Miropolskys could lead to illogical or unsound results.  For example, assume that the "owner or owners of the Remaining Land" (i.e., the Campbells) entered the Access Easement Area and suffered injury due to some hidden hazardous condition created by the Miropolskys, then sued the Miropolskys and won an award of damages.  Under the Miropolskys' interpretation of the indemnification provision, the Campbells would be obligated to indemnify the Miropolskys against that award, plus the attorney's fees incurred by the Miropolskys in their unsuccessful defense.  In other words, the injured Campbells would be left uncompensated and indeed worse off financially than before their "successful" lawsuit.  We cannot

7

conclude that is what the grantor intended without more specific language in the indemnification provision. In Post, 60 Mass. App. Ct. at 646, for example, club members agreed to use golf carts entirely at their own risk and be responsible for any injury, "including without limitation, injury to him/herself and damage to the cart, and . . . to indemnify the Club against all loss, claims or expenses resulting from use of said cart." Id. Plainly, this language encompassed damages for a member's wrongful death arising from his own use of the cart. Here, if the grantor intended the indemnification provision to apply to direct claims as the Miropolskys argue, then even if the Miropolskys had lost the underlying claim for damages against the Campbells (instead of succeeding and receiving a jury award of $12,450, as they did), the Campbells would nonetheless be obligated to pay the Miropolskys' attorney's fees. Of course, it is possible to agree to indemnify another contracting party for that party's fees incurred in an unsuccessful attempt to enforce an agreement. See, e.g., Carter v. Warren Five Cents Sav. Bank, 409 Mass. 73, 80 (1991). Such a result, however, would require much clearer language and, in any event, is not contemplated by the language of the indemnification provision at issue here.

Our conclusion is bolstered by other portions of the declaration. See Murray v. Edes Mfg. Co., 309 Mass. 395, 401 (1941) ("The contract is to be construed as a whole"). In particular, paragraph 9 of the declaration states, in relevant part, that the Miropolskys have "the usual legal and equitable remedies . . . to recover damages." Had the parties intended to provide for fee shifting in the event of a breach of covenant, the subject of fee shifting would most appropriately be included in paragraph 9, which includes the right to "recover damages" in the construction of the development. See Sea Breeze Estates, LLC v. Jarema, 94 Mass. App. Ct. 210, 220 (2018) (construing separate indemnity and direct-claim provisions and limiting indemnification to third-party claims). Moreover, paragraph 9 makes the restrictive covenants within the declaration enforceable by the "Subject Lots" owners, making the twelve-month requirement enforceable. While there may be some persuasiveness to the Miropolskys' claim that the indemnification clause includes "all claims" and thus, was meant to include direct claims, that argument is undermined by the separate provision controlling direct claims. See Carter, 409 Mass. at 80. Indeed, the explicit language of paragraph 9 providing for "usual legal and equitable remedies" suggests that

9

the parties did not intend to circumvent the American Rule.[8]

Accordingly, we agree with the judge that the attorney's fee reference in the indemnification provision does not encompass attorney's fees incurred in connection with direct-party litigation.[9]

<u>Judgment affirmed</u>.

By the Court (Vuono, Neyman & Sacks, JJ.[10]),

*Paul Little*

Clerk

Entered:  June 11, 2026.

---

[8] The Mirpolskys argue that the indemnification provision was "vitally important to [them], because if something goes wrong . . . that language protects us" as proof that their intent was for the provision to apply to direct claims. However, we interpret easements based on the presumed intent of the grantor in light of the attendant circumstances, not based on those with a subsequent interest.  See <u>Patterson</u> v. <u>Paul</u>, 448 Mass. 658, 665 (2007).

[9] Because we hold that paragraph 2 was not intended to apply to direct claims among the parties, we do not reach any issues regarding the amount or calculation of attorney's fees.  The Miropolskys' request for appellate attorney's fees is denied.

[10] The panelists are listed in order of seniority.